STATE OF NORTH CAROLINA v. JOHN ROBERT SWANN, III

No. 181A86

(Filed 28 July 1988)

1. Constitutional Law § 51 — indecent liberties and sexual offense — preaccusation delay — no constitutional speedy trial violation

The defendant in a prosecution for first degree sexual offense and taking indecent liberties with a child was not denied his right to a speedy trial under the Fifth, Sixth and Fourteenth Amendments of the U. S. Constitution and Art. I, § 19 of the North Carolina Constitution where there was no contention that the prosecution deliberately delayed defendant's indictment; the Sixth Amendment speedy trial provision does not apply to the period before arrest, even though there is not a statute of limitations for the crimes with which defendant was charged; and defendant's trial commenced 167 days after he was arrested.

State v. Swann

**2. Criminal Law § 91.12— Speedy Trial Act—exclusions for pretrial motions**

Defendant's right to a speedy trial in a prosecution for first degree sexual offense and taking indecent liberties with a child was not violated by the passage of 155 days between indictment and the beginning of trial where 35 days were excludable for defendant's pretrial motions, including a waiver of arraignment and a motion for a one-week extension to file motions otherwise required upon arraignment. N.C.G.S. § 15A-701(b).

**3. Criminal Law § 106— motion to dismiss for insufficient evidence—incompetent evidence—properly considered**

The trial court did not err in a prosecution for first degree sexual offense and taking indecent liberties with a child by considering the victim's testimony on a motion to dismiss for insufficient evidence because, even assuming the victim was not competent to testify, the court must consider all the evidence whether competent or incompetent in the light most favorable to the State.

**4. Rape and Allied Offenses §§ 5 and 19— first degree sexual offense and taking indecent liberties with a child—dates of offenses—evidence sufficient**

Evidence of first degree sexual offense and taking indecent liberties with a child was sufficient to be submitted to the jury where, although the victim did not testify to the exact dates of the incidents, he did testify that the first incident occurred shortly after his brother was born and that the second incident took place approximately one week later, and the victim's mother testified that her younger son was born 20 September 1984 and that the first incident took place three to four weeks later.

**5. Criminal Law § 138.28— indecent liberties—aggravating factor—prior convictions**

The trial court did not err by sentencing defendant to terms in excess of the presumptive term for indecent liberties convictions based upon the aggravating factor of prior convictions where defendant admitted during direct examination that he had four prior convictions, including one punishable by up to six months imprisonment and one by one year imprisonment, defendant did not raise the issue of indigency and lack of assistance of counsel on a prior conviction at trial, and defendant showed no abuse of discretion in weighing the mitigating and aggravating factors.

**6. Criminal Law § 92.4— first degree sexual offense and indecent liberties with a child—consolidation of charges—no error**

The trial court did not err by consolidating two counts of first degree sexual offense and two counts of taking indecent liberties with a child arising from incidents which allegedly occurred one week apart. N.C.G.S. § 15A-926(a).

**7. Criminal Law § 91.7— denial of motion to continue—absence of witnesses—no abuse of discretion**

The defendant in a prosecution for first degree sexual offense and taking indecent liberties with a child did not show that the trial court abused its discretion by denying his motion to continue based on the absence of two

State v. Swann

essential witnesses where one or possibly both of the witnesses in fact testified at trial.

**8. Constitutional Law § 34— sentencing for first degree sexual offense and taking indecent liberties with a child—no double jeopardy**

Defendant was not twice put in jeopardy by being sentenced for both first degree sexual offense and taking indecent liberties with a child because the elements of the two crimes are different in that conviction of first degree sexual offense requires that the victim be under the age of thirteen, whereas conviction of indecent liberties requires only that the victim be under the age of sixteen; conviction of taking indecent liberties requires that the defendant be at least sixteen years old and five years older than the victim, while first degree sexual offense only requires that he be at least twelve years old and four years older than the victim; and conviction of taking indecent liberties requires that the offense be committed for the purpose of arousing or gratifying sexual desire, which is not required for conviction of first degree sexual offense. Furthermore, *State v. Summrell*, 282 N.C. 157, is expressly disapproved in this regard, and the correct rule is that where a legislature clearly expresses its intent to proscribe and punish exactly the same conduct under two separate statutes a trial court in a single trial may impose cumulative punishments under the statutes. N.C.G.S. § 14-202.1(a)(1) (1986).

**9. Criminal Law § 102.6— sexual offense and indecent liberties—argument concerning God's law—no prejudice**

There was no prejudice in a prosecution for first degree sexual offense and taking indecent liberties with a child where the prosecutor argued that man's law is based on God's law. The court instructed the jury to disregard the argument, and it is true that a good part of our law is based on moral rules derived from biblical principles.

**10. Rape and Allied Offenses § 6.1— first degree sexual offense—failure to submit second degree sexual offense—no error**

The trial court did not err in a prosecution for first degree sexual offense and indecent liberties with a child by failing to submit second degree sexual offense as a lesser-included offense of first degree sexual offense. Second degree sexual offense contains alternative elements which are not elements of first degree sexual offense in that second degree sexual offense requires that the sexual act must be committed by force and against the will of the other person, or against a person who is mentally defective, mentally incapacitated, or physically helpless, and the person performing the act knows or should know of the victim's deficiency. N.C.G.S. § 14-27.5.

**11. Constitutional Law § 48— first degree sexual offense and taking indecent liberties with a child—effective assistance of counsel**

Defendant in a prosecution for first degree sexual offense and taking indecent liberties with a child did not show that his trial counsel failed to render effective assistance of counsel to his prejudice where witnesses who were not interviewed would have presented cumulative evidence; pictorial evidence which was not presented would have been cumulative; there was no showing of what a chemical analysis of a mattress for blood would have shown even

though the mattress was available for analysis at the time of the hearing on effective assistance of counsel; it was not unreasonable not to pursue alibi evidence at trial where defendant testified at trial that he did not know where he was at the time of the incidents; the defendant's counsel may not be blamed for not knowing of a motive the victim's mother may have had for prosecuting the defendant where counsel asked defendant why the victim's mother would do this to the defendant and defendant did not tell his counsel of the incident; there was no prejudice from the failure to file a number of pretrial motions where the motions should have been denied if filed; there was no showing of evidence which was unavailable to defendant which could have been discovered and which would have put defendant in a better position to develop a defense; defendant's attorney was not ineffective in not requesting a recordation of voir dire during jury selection in order to show racial discrimination because *Batson v. Kentucky* was not handed down until after the trial; defendant offered no argument as to why his counsel's failure to make an opening statement would have been the only reasonable strategy in this case and the failure to make an opening statement is not per se unreasonable under prevailing professional norms; specific jury instructions which defendant's counsel did not request should not have been requested or dealt with subordinate features of the case; and there was no prejudice from trial counsel's failure to make an argument at the sentencing hearing because defendant effectively received the minimum possible sentence for his crimes.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from judgments imposing life sentences entered by *Ferrell, J.*, at the 3 February 1986 Session of Superior Court, BUNCOMBE County. The defendant's motion to bypass the Court of Appeals as to the lesser sentences was allowed pursuant to N.C.G.S. § 7A-31(b). Heard in the Supreme Court 10 March 1987.

The defendant was tried on two counts of first degree sexual offense and two counts of taking indecent liberties with a child. Evidence presented at trial tended to show that at the time of the crime the 17-year-old defendant lived in a mobile home with his grandmother, his uncle Sam Swann, his uncle's wife Ann, their infant son, and Ann's 11-year-old son by a previous marriage, who was the victim.

The victim testified that one night shortly after his little brother was born, the defendant came into the room where the victim was sleeping, had anal intercourse with him, and told him not to tell anybody or he would kill him. The victim also testified that about a week later he went hunting with the defendant and, while they were in a cow pasture, the defendant again had anal intercourse with him, and again threatened to kill him if he told

anyone. The victim testified that it was painful, and that afterwards he had to walk sideways because of the pain.

The victim's mother Ann Swann testified that she gave birth to a son on 20 September 1984. About 3 or 4 weeks after she had the baby, she saw her older son sleeping on his cot with no underwear on, and blood on the middle of his sheet. She asked him for an explanation of these things, but received no answer. Later that day, she noticed that he was limping. He told her he was hurting. When she asked where it hurt, he indicated his rectum. It looked swollen and ready to bleed. She put cream on it. Despite her questions, the victim would not tell her what had happened.

Months later, in April 1985, Ms. Swann began to tell her son, the victim, about the facts of life. When she was telling him about homosexuality, he said "that's what J. R. (the defendant) did to me." The victim then told her about both incidents.

Other evidence tended to show that the victim was mentally retarded. Although at the time of trial he was 13 years old, he was functioning at a much lower level. His teacher at a school for mentally retarded children testified that his language abilities were that of a seven-year-old, his reading was at a kindergarten level, and socially and emotionally he functioned as a four- or five-year-old. He had a poor concept of time, but remembered details accurately. He was also easily manipulated by others.

The defendant denied committing the crimes, and testified that he had no idea where he was on the dates of the crimes.

The defendant's grandmother testified that she was never aware of the victim's limping or any bloody sheet, or any other irregularity. Several people testified that the defendant and the victim's mother did not get along well.

The defendant was found guilty on all counts. He was sentenced to the mandatory life sentence for each of the first degree sexual offense convictions, and ten years for each of the indecent liberties convictions, all sentences to run concurrently. The defendant appealed.

The defendant assigned as error ineffective assistance of counsel. After oral arguments, we remanded to the superior court to conduct a hearing in the form of a motion for appropriate relief

on the issue of ineffective assistance of counsel. The hearing was held before Judge Robert D. Lewis on 18 and 19 May 1987. On 9 July 1987, Judge Lewis denied the motion. This Court granted the defendant's motion to file new briefs on that issue.

*Lacy H. Thornburg, Attorney General, by Philip A. Telfer, Assistant Attorney General, for the State.*

*Stephen P. Lindsay, P.A., by Stephen P. Lindsay, for defendant appellant.*

WEBB, Justice.

The defendant first assigns error to the trial court's denial of his motion to dismiss for impermissible pretrial delay. The defendant argues that this delay violated the speedy trial requirement of the Sixth Amendment to the United States Constitution, the due process requirements of the Fifth and Fourteenth Amendments to the United States Constitution, and the North Carolina Speedy Trial Act, N.C.G.S. § 15A-701. The defendant also claims that there is a separate speedy trial requirement in Article I, Section 19 of the North Carolina Constitution, and this requirement was also violated.

We first note that in his motion to dismiss at trial, the defendant only invoked the North Carolina Speedy Trial Act; defendant raises the constitutional issues for the first time on appeal. This Court will not ordinarily consider a constitutional question raised for the first time on appeal. *State v. Dorsett*, 272 N.C. 227, 158 S.E. 2d 15 (1967). Nevertheless, we may do so in the exercise of our supervisory jurisdiction. *Rice v. Rigsby*, 259 N.C. 506, 131 S.E. 2d 469 (1963).

[1]   It would not help the defendant if we considered the constitutional questions he has raised pursuant to the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 19 of the Constitution of North Carolina. Although the defendant says in his assignment of error that his right to a speedy trial is based on the Constitution of North Carolina as well as the Constitution of the United States, he argues only the question of whether the United States Constitution applies. The Sixth Amendment to the United States Constitution commands that "[i]n all criminal prosecutions the accused shall en-

joy the right to a speedy and public trial." The United States Supreme Court has held in *U.S. v. Marion*, 404 U.S. 307, 30 L.Ed. 2d 468 (1971), that the speedy trial provision of the Sixth Amendment does not apply to the period before a defendant is indicted, arrested, or otherwise officially accused. We applied this rule in *State v. McCoy*, 303 N.C. 1, 277 S.E. 2d 515 (1981).

The defendant argues that the rationale of *Marion* is that there was no need for the application of the speedy trial provision in that case because the defendant was protected by a statute of limitations. There is not a statute of limitations for the crimes with which the defendant was charged in this case and the defendant contends the speedy trial provision of the Sixth Amendment should apply to the pre-accusatory period. We do not believe the Court's holding in *Marion* was based on the fact that there was a statute of limitations. Nevertheless in *U.S. v. McDonald*, 456 U.S. 1, 71 L.Ed. 2d 696 (1982), there was no statute of limitations and the Court held the speedy trial clause does not apply to the pre-accusatory period. The defendant was arrested on 22 August 1985 and his trial began on 5 February 1986. The period before his arrest is not applicable in determining the defendant's Sixth Amendment rights. The defendant's trial commenced 167 days after he was arrested. He was not deprived of a speedy trial under the Sixth Amendment to the Constitution of the United States.

The defendant is not helped by the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution. The United States Supreme Court dealt with the requirements for establishing a due process violation based on pre-accusation delay in *U.S. v. Lovasco*, 431 U.S. 783, 52 L.Ed. 2d 752 (1977). This Court summarized the *Lovasco* holding in *State v. McCoy*, 303 N.C. 1, 277 S.E. 2d 515:

> Essentially a pre-accusation delay violates due process only if the defendant can show that the delay actually prejudiced the conduct of his defense and that it was engaged in by the prosecution deliberately and unnecessarily in order to gain tactical advantage over the defendant.

*Id.* at 7-8, 277 S.E. 2d at 522. The defendant does not argue, nor does the record indicate, that the prosecution deliberately delayed the defendant's indictment. The delay was largely due to

the fact that the victim never mentioned the incidents to anyone until April 1985, six months after the incidents occurred. There was no due process violation because of pretrial delay.

[2] The defendant also contends it was error to deny his motion to dismiss for failure to comply with the Speedy Trial Act, N.C.G.S. § 15A-701.

The defendant at trial moved to dismiss for failure to comply with the Speedy Trial Act, N.C.G.S. § 15A-701. Under that statute, a defendant's trial must begin "[w]ithin 120 days from the date the defendant is arrested, served with criminal process, waives an indictment, or is indicted, whichever occurs last." N.C.G.S. § 15A-701(a1)(1) (1983). The statute provides that certain time periods are excluded from the computation of this 120-day period. Two are relevant to the present case:

> (1) Any period of delay resulting from other proceedings concerning the defendant, including, but not limited to, delays resulting from:
>
>     . . .
>
>     (d) Hearings on any pretrial motions or the granting or denial of such motions;
>
> (7) Any period of delay resulting from a continuance granted by any judge if the judge granting the continuance finds that the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial and sets forth in writing in the record of the case the reasons for so finding. . . .

N.C.G.S. § 15A-701(b) (1987 Cum. Supp.).

In the present case, the last of the four events specified in the statute was the defendant's indictment on 3 September 1985. The defendant's trial began on 5 February 1986, 155 days later. Within this time, the trial court granted the defendant's motion of 9 September 1985 to continue through 23 September 1985, and his motion of 23 September 1985 to continue through 7 October 1985. The time to be excluded due to these continuances is 28 days, under the rule enunciated in *State v. Harren*, 302 N.C. 142, 273 S.E. 2d 694 (1981), that in calculating a time period, the first day is excluded and the last day is included.

On 7 October 1986, the defendant waived arraignment and requested a one-week extension to file motions otherwise required upon arraignment. This seven-day period was properly excluded under N.C.G.S. § 15A-701(b)(1)d. Thus, a total of 35 days is excludable from the 155 days between indictment and trial. The remaining 120 days meets the statutory requirement.

The defendant contends that the seven-day period from 7 October 1985 should not be excluded because he was to be arraigned on 7 October 1985 and he could not have been tried that week if his motion had not been granted. The plain words of N.C.G.S. § 15A-701(b)(1)d require the exclusion of any period of delay which results from the granting of a pretrial motion. This seven-day period was properly excluded. The defendant's first assignment of error is overruled.

The defendant next assigns error to the denial of his motion to dismiss on the ground there was not sufficient evidence to convict him. He argues that this motion should have been granted for three reasons. He says (1) the victim was incompetent to testify, (2) the victim did not testify as to the dates of the offenses charged, and (3) based on these first two assertions, the defendant was "more appropriately" guilty of a sex offense against a mental defective.

[3] In passing on a motion to dismiss the court must consider all evidence, whether competent or incompetent, in the light most favorable to the State. *State v. Allen*, 279 N.C. 406, 183 S.E. 2d 680 (1971). In another part of this opinion we hold that the victim was competent to testify, but assuming he was not, his testimony was admitted by the court and it was properly considered on the motion to dismiss.

[4] As to his contention that the victim did not testify as to the dates of the offenses the defendant argues that the ages of both the defendant and the victim were essential in proving the charges. If the date of the offenses was not proved, says the defendant, essential elements of the offenses were not proved. The victim did not testify to the exact dates of the incidents but he did testify the first incident occurred shortly after his brother was born. He testified the second incident took place approximately one week later. The victim's mother testified that her youngest son was born 20 September 1984 and the first incident

took place three to four weeks later. We hold this is sufficient evidence for the jury to find the dates of the offenses. In light of the fact that we hold the evidence was sufficient to be submitted to the jury for both the charges for which the defendant was tried, we do not discuss his third contention.

[5]  The defendant next contends the trial court erred in sentencing him to prison terms in excess of the presumptive term for the indecent liberties convictions, based on the aggravating factor of prior convictions. The defendant complains that (1) it was not clear whether the prior convictions the court relied on to aggravate the sentence were punishable by more than 60 days' confinement, (2) the court did not determine whether at the time of his earlier convictions the defendant had been represented by or had waived counsel, and (3) that the nature of his prior convictions did not merit the aggravation of the sentence.

The defendant's complaints have no merit. The defendant admitted during direct examination that he had four prior convictions, including one for damage to property and one for driving without a license. These two offenses are punishable by up to six months' imprisonment and one year imprisonment, respectively. N.C.G.S. § 14-160(a) (1986); N.C.G.S. § 20-28(a) (1983). On each of the findings of factors sheets, the trial judge marked the box indicating his finding that "[t]he defendant has a prior conviction or convictions for criminal offenses punishable by more than 60 days' confinement."

The burden of raising the issue of indigency and lack of assistance of counsel on a prior conviction is on the defendant. *State v. Thompson*, 309 N.C. 421, 307 S.E. 2d 156 (1983). The defendant did not raise this issue at trial, so he cannot now complain that the court did not address it.

The "weight to be given mitigating and aggravating factors is a matter solely within the trial court's discretion." *State v. Penley*, 318 N.C. 30, 52, 347 S.E. 2d 783, 796 (1986). The defendant has shown no abuse of discretion in the present case, and his assignment of error is overruled.

[6]  The defendant next assigns error to the consolidation of the four charges for trial. He argues that the consolidation for trial of

offenses which allegedly occurred a week apart is not allowed under N.C.G.S. § 15A-926(a) which provides in part:

> Two or more offenses may be joined in one pleading or for trial when the offenses, whether felonies or misdemeanors or both, are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan.

In *State v. Williams*, 308 N.C. 339, 302 S.E. 2d 441 (1983), the defendant was charged with kidnapping, two counts of second degree rape, first degree burglary, second degree burglary and larceny. Some of the charges grew from an incident which occurred on 3 October 1976 and the other charges grew from an incident which occurred on 29 October 1976. The evidence showed that on both occasions the defendant entered the apartment of the same woman and raped her. This Court held there was a transactional connection between all the alleged crimes and found no error in the consolidation of them for trial. In *State v. Bracey*, 303 N.C. 112, 277 S.E. 2d 390 (1981), the defendant was charged with committing three common law robberies within a period of ten days. The method of the robbery in each case was very similar to the robberies in the other two. This Court said there was a transactional connection between the alleged crimes and found no error in their joinder for trial. We hold based on the holdings of *Williams* and *Bracey* that there was no error in the consolidation of the charges for trial in this case.

[7] The defendant next assigns error to the trial court's denial of his motion to continue. The motion, filed and heard on the first day of trial, was made for the reason that two essential witnesses for the defendant were absent or unavailable. The witnesses were identified on the written motion as Connie Robinson and Jocelyn Montgomery. In court, defense counsel identified them as Connie Robinson and Joyce Lynn Montgomery. Defense counsel stated, "I'm informed that these witnesses, one of whom is the fiancee of the defendant, would testify as to his character, both generally and possibly specifically as to specific traits, and she is not in the courtroom."

A request for a continuance based on the absence of a witness is addressed to the sound discretion of the trial court; absent a showing of abuse of discretion, the court's ruling on the request

is not reviewable. *State v. Williams*, 304 N.C. 394, 284 S.E. 2d 437 (1981), *cert. denied*, 456 U.S. 932, 72 L.Ed. 2d 450 (1982). The defendant in the present case has shown no abuse of discretion in denying his motion to continue. Moreover, we do not believe the defendant was prejudiced by the denial of this motion. The record reveals that a Connie Robinson did in fact testify for the defendant as a character witness. Another character witness for the defendant, Judith Ann Knueppel, testified that she was the defendant's fiancee. It thus appears that one or possibly both of the "unavailable" witnesses in fact testified at trial. The defendant's assignment of error has no merit.

[8] The defendant next assigns error to the imposition of sentences for the first degree sexual offense as well as the offenses of taking of indecent liberties with a child. The defendant, relying on *Blockburger v. U.S.*, 284 U.S. 299, 76 L.Ed. 306 (1932), argues that first degree sexual offense does not have an element that is not contained in the offense of taking indecent liberties with a child. For that reason he says he has twice been put in jeopardy by being sentenced twice for the same offense. In *Blockburger* the United States Supreme Court stated:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

*Id.* at 304, 76 L.Ed. at 309. In *State v. Gardner*, 315 N.C. 444, 340 S.E. 2d 701 (1986), we held that in single prosecutions for more than one crime, such as in this case, *Blockburger* has no application. We held in *Gardner* that it is a matter of legislative intent as to whether a defendant may receive multiple punishment if he is convicted of two crimes in one prosecution. Although the elements of two crimes may be identical, we said in *Gardner*, multiple sentences may be imposed if that is the intent of the legislature. In determining the intent of the legislature, the fact that each crime for which a defendant is convicted in one trial requires proof of an element the other does not demonstrates the legislature's intent that the defendant may be punished for both crimes. *See State v. Etheridge*, 319 N.C. 34, 352 S.E. 2d 673 (1987).

We disagree with the defendant that first degree sexual offense does not have an element that is not contained in the offense of taking indecent liberties with a child. Conviction of first degree sexual offense requires that the victim be under the age of 13, whereas conviction of indecent liberties requires only that the victim be under the age of 16. Conviction of taking indecent liberties requires that the defendant be at least 16 years old and five years older than the victim, whereas first degree sexual offense only requires that he be at least 12 years old and four years older than the victim. Conviction of taking indecent liberties also requires that the offense be committed "for the purpose of arousing or gratifying sexual desire" which is not required for conviction of first degree sexual offense. N.C.G.S. § 14-202.1(a)(1) (1986). The elements of the two crimes are different.

The defendant also contends that he was subjected to double jeopardy under *State v. Summrell*, 282 N.C. 157, 192 S.E. 2d 569 (1972). In *Summrell* the defendant was convicted of resisting an officer and assaulting an officer. This Court said, "[e]ach warrant included all the elements of the offense charged in the other, and each specified only acts of violence which defendant directed at the officer's person while he was attempting to hold defendant in custody." *Id.* at 173, 192 S.E. 2d at 579. Although the defendant in *Summrell* had been convicted of two offenses in a *single prosecution*, we held that he had been placed in double jeopardy solely because he was sentenced for both crimes, each of which had all the elements of the other. In light of more recent cases, however, *Summrell* is no longer authoritative on this point and is expressly disapproved in this regard. The correct rule is that, "where a legislature clearly expresses its intent to proscribe and punish exactly the same conduct under two separate statutes a trial court *in a single trial* may impose cumulative punishments under the statutes." *State v. Gardner*, 315 N.C. at 453, 340 S.E. 2d at 708 (quoting *State v. Murray*, 310 N.C. 541, 547, 313 S.E. 2d 523, 528 (1984) ).

In this case, the elements of the two crimes in question are different. Therefore, no problem of double jeopardy arises. *See State v. Etheridge*, 319 N.C. 34, 352 S.E. 2d 673. We hold the defendant was not put twice in jeopardy by being sentenced for both first degree sexual offense and taking indecent liberties with a child.

[9] The defendant next contends it was error for the court not to declare a mistrial after what the defendant contends was an improper argument to the jury by the prosecuting attorney. The prosecuting attorney made the following argument:

> I ask you to recall a question asked of Mrs. Swann on cross examination about what she did to prepare her son for Court. And if my recollection of her response differs from yours, then you take yours, but I recollect that she answered, "I told him just to tell the truth. God has the situation in hand, and if he is not found guilty, he will still have to answer to God."
>
> Well, it isn't God's law that brings us into the courtroom today. It's man's law, but man's law is based almost wholly on moral law or God's law. Our law also says, "Thou shalt not kill," and our law . . . also says, "Thou shall not steal. . . ."

Defense counsel objected to this argument and the court instructed the jury to disregard it. The defendant, relying on *State v. Moose*, 310 N.C. 482, 313 S.E. 2d 507 (1984), argues that the argument was an improper attempt to appeal to the jury's sympathy and compassion which was not curable by the court's instruction not to consider it. In *Moose* we held it was improper to argue that the police, prosecutors and judges are ordained by God as his representatives on this earth and that to resist these powers is to resist God. That is not the same as in this case in which the prosecuting attorney said our law is based on God's law. It is true that a good part of our law is based on the moral rules we derive from biblical principles. In any event the court instructed the jury to disregard this argument. We assume the jury followed the court's instructions. *State v. Woods*, 307 N.C. 213, 297 S.E. 2d 574 (1982). The defendant was not erroneously prejudiced by this argument.

[10] The defendant next says it was error not to submit to the jury second degree sexual offense as a lesser included offense of first degree sex offense. The defendant, relying on *State v. Brown*, 300 N.C. 41, 265 S.E. 2d 191 (1980), argues that there was sufficient evidence to support a finding of guilty of second degree sexual offense and it was error not to submit it to the jury. In order for an offense to be submitted as a lesser included offense not only must there be evidence of all elements of the offense but

all the elements of the offense to be submitted must be contained in the greater offense. *State v. Weaver*, 306 N.C. 629, 295 S.E. 2d 375 (1982). Second degree sexual offense has as an element that the sexual act must be committed "by force and against the will of the other person," or against a person "who is mentally defective, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know" of the victim's deficiency. N.C.G.S. § 14-27.5 (1986). Neither of these alternative elements is an element of the first degree sexual offense with which the defendant was charged. In was not error for the court not to submit second degree sexual offense as a lesser included charge.

[11] In his last assignment of error the defendant contends that because of the ineffectiveness of his counsel he was denied meaningful representation as guaranteed him by the Sixth and Fourteenth Amendments to the Constitution of the United States and Article I, Sections 19 and 23 of the Constitution of North Carolina. After hearing oral arguments we remanded the case to superior court for a hearing on this assignment of error. A hearing was held before Judge Robert D. Lewis who made findings of fact based on the evidence and concluded the defendant's counsel was not ineffective and if he were the defendant had not shown any prejudice. We hold the evidence supported the findings of fact and the findings of fact supported the conclusion.

In *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed. 2d 674 (1984), the United States Supreme Court dealt with the question of ineffective assistance of counsel. The Supreme Court said, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 80 L.Ed. 2d at 692-93. The Court also said, "[i]n any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 80 L.Ed. 2d at 694. The Court said a no more detailed rule should be formulated and a court should be very deferential in judging the competency of an attorney's performance. The Supreme Court also said, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 695, 80

L.Ed. 2d at 698. In *State v. Braswell*, 312 N.C. 553, 324 S.E. 2d 241 (1985), this Court expressly adopted the *Strickland* test as the standard for measuring the ineffective assistance of counsel under the North Carolina Constitution.

The defendant contends his trial counsel was deficient in seven ways. He says first that his counsel did not properly investigate the case and prepare for trial. The defendant says specifically that there were twenty-one potential witnesses who should have been interviewed prior to trial. Twelve of these witnesses testified at trial. Some of those who were not interviewed would have testified they were living in the trailer or near the trailer in which one of the incidents allegedly occurred and they either did not hear anything unusual at the time of the incident or that they observed the victim shortly after the incident allegedly occurred and there was nothing peculiar in the way he walked. There was testimony from other witnesses at trial to this effect. If the witnesses which the defendant's attorney did not interview had testified their testimony would have been cumulative. We cannot hold that if this cumulative testimony had been used the result of the trial would have been different.

The defendant also complains that his trial counsel did not visit the crime scene or have photographs made of it for introduction as evidence. He says this is important because it would show the closeness of the rooms in the trailer and the likelihood that someone in the trailer would have heard a noise if the incident had occurred as contended by the State. We believe the average juror would know of the close quarters in a trailer. Pictorial evidence would have been cumulative.

The defendant also says that his trial counsel should have had a chemical analysis performed of the mattress on which the alleged incident occurred in order to determine whether there was blood on the mattress. The mattress was available at the time of the hearing before Judge Lewis and no chemical analysis had been performed. We do not know what such an analysis would have shown.

We hold that the defendant has not shown that there is a reasonable possibility that but for errors of the defendant's

counsel in his pretrial investigation the result of the trial would have been different.

The second instance which the defendant contends shows his counsel was ineffective is the failure to pursue alibi as a defense. At the hearing before Judge Lewis the defendant contended he was living with his mother in Burnsville at the time of the offense and if his counsel had interviewed his mother he would have discovered his mother would have provided evidence of an alibi. The defendant's trial counsel testified the defendant told him he did not know where he was at the time of the alleged incidents. The defendant testified to the same thing at trial. In *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed. 2d 674, the United States Supreme Court said:

> And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

*Id.* at 691, 80 L.Ed. 2d at 696. From the testimony of defendant's trial counsel and the testimony of the defendant at trial we cannot say it was unreasonable not to pursue an alibi defense at trial. At the remand hearing the defendant's mother testified the defendant was living with her in Burnsville at the time of the alleged incidents. She said she tried to call the defendant's trial attorney to tell him of this alibi evidence but was not able to get him. She did not come to the trial. The defendant contends this failure by his trial counsel to investigate by talking to his mother deprived him of alibi evidence and proves ineffectiveness on the part of his counsel. Judge Lewis found that the testimony of the defendant's mother was inherently incredible in light of the fact that the information was not given to defendant's counsel and indeed that the mother did not come to the trial. We hold the record supports this conclusion.

The defendant next argues that if his counsel had investigated more thoroughly he would have discovered that the victim's mother had a motive for prosecuting the defendant. The

defendant testified at the remand hearing that approximately one month before the crimes for which he was charged allegedly occurred that the victim's mother made sexual advances toward him which he rejected. He says this is important evidence of a motive to prosecute him which should have been developed. The defendant and his counsel testified at the hearing that the counsel asked defendant why the victim's mother would do this to the defendant and the defendant did not tell his counsel of the alleged sexual advance. The defendant testified he did not see the importance of it. The defendant's counsel may not be blamed for not knowing of this incident if the defendant did not tell him.

The defendant next complains that his trial counsel should have filed a number of pretrial motions, including a motion to compel discovery, a motion for a bill of particulars, a motion to require the State to elect between the charges of first degree sexual offense and taking indecent liberties with a child, a motion pursuant to *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed. 2d 215 (1963), requiring the State to produce all exculpatory evidence in its possession, including criminal records of the State's witnesses, and mental or physical conditions of witnesses affecting their ability to perceive or recall events, a motion to record all judicial proceedings (the voir dire hearing for the selection of the jury was not recorded), a motion to determine the competency of the victim to testify, and motions in limine to exclude evidence of the defendant's use of a gun and use of marijuana.

The defendant's trial attorney made a request for voluntary discovery with which the State did not comply. No motion for an order compelling discovery was made and the defendant contends this shows ineffective assistance of counsel. The defendant says this is so because the defendant's counsel had to analyze what discovery he was given during the trial. Except for those items the defendant was given at trial there has been no showing what else may have been discovered. As we point out in another part of this opinion the defendant was not prejudiced because he did not receive the items delivered to him before trial. We cannot say the defendant was prejudiced because his attorney did not file a motion to compel discovery when we do not know what other evidence could have been discovered other than the document given him at trial.

The defendant says the purpose of a bill of particulars is to inform the defendant of the specific occurrences intended to be brought out at trial and to limit the scope of inquiry at the trial. He says if the State had answered a bill of particulars and told him the exact time of day and the exact location at which the offenses allegedly occurred as well as the exact conduct which allegedly constituted a sexual offense it would have been valuable to the defendant in determining whether there was an alibi defense and whether there might have been any witnesses or physical evidence. We have discussed an alibi defense in another part of this opinion. We do not believe the defendant would have been in a better position to develop an alibi defense if he was told what time of day the offenses allegedly occurred when he had told his attorney he did not know where he was on those days. We also believe the defendant had adequate information to determine whether there were witnesses or physical evidence without a bill of particulars.

If the defendant's trial attorney had moved to require the State to elect which of the charges upon which the defendant would be prosecuted such a motion should have been denied. First degree sexual offense and taking indecent liberties with a child contain different elements. In such a case an election is not required. *State v. McGill*, 296 N.C. 564, 251 S.E. 2d 616 (1979).

The defendant argues that if a *Brady* motion had been made requiring the State to deliver to the defendant any exculpatory evidence in the possession of the State the defendant's attorney could have gotten (1) the prior criminal records of all the State's witnesses, (2) any inconsistent statements made by any State's witnesses, and (3) any mental or physical condition of a witness that could affect that witness' ability to perceive the alleged crime at the time it occurred or could affect the witness' ability to recall the crime. Criminal records of witnesses are not discoverable under *Brady*. *State v. Bruce*, 315 N.C. 273, 337 S.E. 2d 510 (1985). When asked by Judge Lewis at the remand hearing what *Brady* material had been withheld the defendant's attorney said, "[t]he specific mental condition of this child at the time." The defendant was certainly in a position to know of the mental condition of the victim without being told by the State. The defendant had lived in the house with the victim and his lawyer had interviewed him. The defendant argues that if a *Brady* motion had

been made "the State would have been required to give counsel a detailed description of that condition prior to trial." The difficulty with this assertion is that there is nothing in the record to show the State had more of a "detailed description" of the victim's mental condition than the defendant. The defendant has not shown he was prejudiced by his counsel's failure to get from the State whatever knowledge it had as to the victim's mental condition.

At the hearing before Judge Lewis the transcripts of two interviews with the victim were offered in evidence. One of them was a transcript of an interview with the defendant's trial counsel. The other is a transcript of an interview with the victim by some other person. In his interview with defendant's trial counsel the victim was much more equivocal as to what had happened than he was in his interview with the second person. The transcript of the interview with the other person was in the possession of the State. The defendant contends that a *Brady* motion would have required the State to deliver this prior inconsistent statement to the defendant's trial attorney and he would have been better able to cross-examine the witness. The district attorney had delivered before trial to the defendant's counsel a transcript of an interview the district attorney had with the victim. The defendant's trial counsel was aware the victim had been equivocal in answering questions as to the incidents during interviews. We cannot hold it was prejudicial to the defendant for his trial counsel not to have a transcript of yet another interview.

The defendant next contends his trial counsel should have filed a motion requesting the complete recordation of the trial including the voir dire on the jury selection. He says that by failing to have the questions asked on jury voir dire recorded he was prejudiced. He says this is so because if the voir dire had been recorded he might be able to show pursuant to *Batson v. Kentucky*, 476 U.S. 79, 90 L.Ed. 2d 69 (1986), that there was racial discrimination in the jury selection. We note that this case was tried in February 1986. *Batson* was handed down on 30 April 1986 and changed the law as to the proof required to show a constitutional violation by a racially discriminatory selection of a jury. We cannot hold an attorney is ineffective because he did not anticipate a change in the law by the United States Supreme Court.

Another motion the defendant says his trial counsel should have made was to disqualify the victim as a witness on the ground the victim was incompetent to testify. The defendant argues that if such a motion had been made the victim could have been found incompetent and not allowed to testify. He also says he could have made a record for appeal. The answer to this argument is that the defendant was not prejudiced because the record shows the victim was competent to testify. The competency of a witness to testify is governed by N.C.G.S. § 8C-1, Rule 601 which provides in part:

(a) *General Rule*—Every person is competent to be a witness except as otherwise provided in these rules.

(b) *Disqualification of witness in general*—A person is disqualified to testify as a witness when the court determines that he is (1) incapable of expressing himself concerning the matter as to be understood, either directly or through interpretation by one who can understand him, or (2) incapable of understanding the duty of a witness to tell the truth.

The record in this case clearly shows the victim was a competent witness. Before being sworn he stated, "I'll just tell it like it is. I do tell the truth." After being sworn he was able to state fully what had happened in both instances. We could not hold that the witness was incapable of understanding the duty of a witness to tell the truth or incapable of expressing himself so that he could be understood as to the matter.

The last pretrial motions the defendant says his trial counsel should have filed were motions in limine to exclude testimony that the defendant had a gun and that the defendant used marijuana. The defendant argues that if motions in limine had been made this testimony could possibly have been excluded. We do not believe that evidence the defendant had a gun when he committed the sexual offenses while hunting with the victim should be excluded. We also do not believe we should hold ineffective assistance of counsel can be proved by the failure of defendant's counsel to make a motion in limine in this instance. A ruling on a motion in limine is an interlocutory ruling which a trial court may change when the evidence is offered at trial. *State v. Lamb*, 321 N.C. 633, 365 S.E. 2d 600 (1988). In this case the fact that motions in limine were not made did not prevent the defendant from ob-

jecting to the evidence at trial. For that reason no prejudice occurred at that time. No assignment of error was made to the admission of this evidence and the defendant has not shown us how he was prejudiced by the admission of any evidence for which he says a motion in limine should have been made.

We hold the defendant has not shown his trial attorney was ineffective by the failure to make pretrial motions.

The defendant next complains that trial counsel did not make an opening statement. However, the defendant offers no argument as to why an opening statement would have been the only reasonable strategy in this case. Rather, he relies on statements in trial treatises regarding the importance of a good opening statement. We cannot hold that failure to make an opening statement is *per se* unreasonable under prevailing professional norms, especially when it is common practice in this State to waive the opening statement. *See* Blanchard and Abrams, *Opening and Closing Arguments: The Law in North Carolina* (1981), p. 3. Trial counsel testified at the hearing that he made the tactical decision not to give an opening statement in the present case because he was uncertain what evidence would be introduced at trial, and was even uncertain as to whether the victim would be allowed to testify. This was a tactical decision and we cannot review it. *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed. 2d 674.

The defendant next says his trial counsel was ineffective for failing to request six specific jury instructions which are (1) the failure to request an instruction on how to treat the evidence of the failure of the child to report the incidents for six months, (2) the failure to request the court to submit a charge of second degree sexual offense, (3) the failure to request a charge as to how to treat the corroborating testimony of the State's witnesses, (4) the failure to request a charge on the treatment of the victim's prior inconsistent statements, (5) the failure to request a charge on the motive of the victim's mother to prosecute the defendant, and (6) the failure to request an instruction on the consideration to be given the testimony of a mentally retarded child.

We have held that second degree sexual offense is not a lesser included offense of the first degree sexual offense charged in this case. The defendant's trial counsel should not have requested that it be submitted to the jury.

The other instructions which the defendant says should have been submitted dealt with subordinate features of the case. It was not error for the court not to charge on them. In *State v. Seagroves*, 78 N.C. App. 49, 336 S.E. 2d 684 (1985), *disc. rev. denied*, 316 N.C. 384, 342 S.E. 2d 905 (1986), the Court of Appeals held that in order to show ineffective assistance of counsel because of the failure to request jury instructions, the defendant must show that without the requested instructions there was plain error in the charge. These five requested instructions were directed at the credibility of the victim and other witnesses. Judge Lewis' conclusion with regard to these requested instructions was:

> With respect to failure to request instructions, the jury was aware that credibility was the issue in this case. The court instructed on interested witnesses, and both counsel argued on the credibility aspect of the case. The suggested instructions would have added little to the jury's awareness of the importance of deciding whom to believe.

The record supports this conclusion.

Finally, the defendant complains of trial counsel's failure to make an argument at the sentencing hearing. However, this failure cannot possibly have prejudiced the defendant; he effectively received the minimum possible sentence for his crimes, since the trial judge ordered all four sentences to run concurrently.

We hold that the defendant has made no showing that his trial counsel failed to render effective assistance of counsel, to the prejudice of his defense, and that Judge Lewis properly denied his motion for appropriate relief. The defendant had a fair trial, free from prejudicial error.

No error.