## STATE v. OXENDINE

[112 N.C. App. 731 (1993)]

STATE OF NORTH CAROLINA v. JOYCE BARNES OXENDINE

No. 9316SC69

(Filed 7 December 1993)

**1. Constitutional Law § 301 (NCI4th) — embezzlement — effective assistance of counsel — failure to present a defense**

Defendant received effective assistance of counsel in a prosecution for embezzlement by a public officer where defense counsel did not present evidence but that decision did not constitute unreasonable professional judgment. Defendant's exculpatory statements were put before the jury in the State's evidence without defendant having to answer any questions on cross-examination, much of the testimony of defendant's potential witnesses was cumulative, and defendant's counsel gained a significant tactical advantage in not presenting evidence in that defendant could then both open and close oral arguments to the jury. The opportunity to open and close arguments can be particularly significant when the State's case is based purely on circumstantial evidence, as it was here.

**Am Jur 2d, Criminal Law §§ 752, 985-987.**

**2. Evidence and Witnesses § 969 (NCI4th) — embezzlement — tax office records — hearsay — public records exception**

The trial court properly admitted tax department records under the public records exception to the hearsay rule in a prosecution for embezzlement by a public officer where defendant's supervisor, the collection supervisor of the tax department, identified each of the challenged records as records belonging to the tax department and testified that each record was generated and maintained by the tax department. All that is required to authenticate public records is evidence that "a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept." N.C.G.S. § 8C-1, Rule 901(b)(7).

**Am Jur 2d, Evidence §§ 914 et seq.**

Appeal by defendant from judgment entered 8 September 1992 by Judge Joe Freeman Britt in Robeson County Superior Court. Heard in the Court of Appeals 6 October 1993.

STATE v. OXENDINE

[112 N.C. App. 731 (1993)]

Defendant was employed with the Robeson County Tax Department (hereinafter tax department) as a tax clerk from 1984 until her termination for these charges in 1991. An internal investigation was launched when several discrepancies were revealed in taxpayer accounts during an audit of the tax department for the fiscal year ending 1990. On 9 September 1991, defendant was indicted on four counts of embezzlement by a public officer, G.S. 14-92. On 4 September 1992, a jury found defendant guilty on all four counts. On 8 September 1992, the trial court sentenced defendant to two consecutive three year sentences on two counts (91 CRS 16283 and 91 CRS 16284) and prayer for judgment was continued on the remaining two counts (91 CRS 16285 and 91 CRS 16286).

At trial the State's evidence tended to show the following: In June 1990, the accounting firm of Dean and Wilkins, C.P.A.s conducted an audit of the Robeson County Tax Department for the fiscal year ending 1990. As part of that audit, Ms. Patty Dean, a certified public accountant and partner in the firm, sent verification forms to randomly selected taxpayers. The taxpayers were to verify the account balance on the form shown by the tax department records and return the form. When Ms. Dean received a response indicating a discrepancy, she examined the tax department records to try to reconcile the differences. Ms. Dean received responses from three taxpayers indicating that each taxpayer had paid taxes which had not been credited to their accounts. Ms. Dean examined the tax department records for these accounts and found in each instance that although the taxpayers' checks had been properly deposited in the Robeson County bank account, the taxpayers' tax accounts had not been credited. Ms. Dean also found that the taxpayers' checks had not been misapplied to other taxpayers' accounts and that the daily journals of the clerk who received the taxpayers' checks showed no cash overages or shortages on the days that the clerk received them. Ms. Dean concluded that in each instance cash in the amount of the taxpayers' checks had not been properly accounted for.

Defendant's supervisor, Gary N. Foley, Jr., testified that defendant's primary responsibility as a tax clerk was to receive payments from taxpayers and to properly account for those payments. Mr. Foley explained the duties of a tax clerk. He testified that when a clerk receives a payment, they are to make a computer entry crediting the taxpayer's account. When the clerk receives a check as a payment, they are required to place their initials

on the check. Each clerk maintains a daily journal which shows all the items taken in for the day. At the end of the day, each clerk prepares an adding machine tape showing all the checks they received that day. The clerk then adds to that total the cash on hand. The sum of the checks and cash should equal the computer balance and the daily journal balance. The adding machine tapes are initialed and dated by the clerk and kept in the tax department records. Each clerk then prepares a daily check-up sheet listing the checks, cash, and combined check and cash totals for the day. The daily check-up sheet also has a space to indicate whether there are any cash overages or shortages. A cash overage or shortage should be brought to the attention of the supervisor if the clerk cannot locate the problem. These daily check-up sheets are also signed by each individual clerk and kept as part of the tax department's records. The clerk either turns the cash in to the supervisor at the end of the day or locks it in the cash drawer and places it in the vault.

Mr. Foley identified defendant's initials on the taxpayers' checks which had not been credited to the taxpayers' accounts and which were also the subject of the indictment. Mr. Foley also identified defendant's initials on her adding machine tape which also showed that defendant had received and processed those checks. Mr. Foley identified defendant's initials on her daily check-up sheet which showed that on the days defendant received and processed those checks, she did not record any cash overages or shortages for those days. In sum, Mr. Foley testified that on each of the four counts alleged in the indictment, a taxpayer had made a payment by giving a check to defendant which she included on her adding machine tape. The tax department's bank deposit the following day included the amount of the checks, but there was no record of any of the checks having been posted to any particular account. Since defendant's check-up sheet for those dates showed a balance with no overage or shortage, Mr. Foley testified that he could not account for the discrepancies. The county later had to credit the taxpayers' accounts out of the general fund.

SBI Agent Tony Underwood was assigned to investigate the account irregularities in the tax department. After reviewing the tax department records, Agent Underwood interviewed defendant. Defendant cooperated with Agent Underwood and denied any wrongdoing. Defendant gave explanations as to where the missing money might have gone, but after a thorough review of the tax department

records, Agent Underwood determined that the account discrepancies could not be reconciled by erroneous postings. Agent Underwood concluded that there was a cash shortage between the amount of cash transactions defendant processed for the day and the amount of cash that she reported on her collection summary sheet for the end of the day. In each instance, the cash shortage was equal to the amount of the checks alleged in the indictment.

When Agent Underwood arrested defendant, she again maintained that she had done nothing wrong. She told Agent Underwood that she had made many mistakes in her work but that she had never taken any money out of the tax department. She said that she had on occasions used her own money to make up the shortages. Defendant told Agent Underwood that on one occasion she wrote a check for $400 to try to make up a shortage of money. Defendant also told Agent Underwood that other people in the tax department office had access to the cash in the vault and that other employees had computer access to her work.

Defendant presented no evidence. The jury returned a guilty verdict on all four counts charged in the indictment. Defendant appeals.

*Attorney General Michael F. Easley, by Assistant Attorney General Charlie C. Walker, for the State.*

*Cheshire, Parker, Hughes & Manning, by Joseph B. Cheshire, V and Robert M. Hurley, for defendant-appellant.*

EAGLES, Judge.

Defendant's twenty-four assignments of error can be grouped into two main arguments. First, defendant contends that she was prejudiced by the ineffective assistance of her trial counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution. Second, defendant contends that the trial court committed prejudicial error in admitting certain tax department records into evidence and allowing witnesses to testify as to the information in those documents. We find no error.

I.

[1] Defendant contends that she received ineffective assistance of counsel and that counsel's ineffectiveness denied defendant her right to a fair trial under the Constitution of North Carolina and

under the Sixth and Fourteenth Amendments to the United States Constitution. We disagree.

In *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674 (1984), the United States Supreme Court held that in order for a convicted defendant to prevail on an ineffective assistance of counsel claim, the defendant must satisfy a two-part test. The defendant must first show that counsel's performance was so deficient that counsel was not "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 80 L.Ed.2d at 693. In addition to showing that counsel's performance was deficient, the defendant must also show that counsel's deficient performance deprived the defendant of a fair trial, a trial whose result is reliable. *Id.* There is no reason for a court to address both components of this test if the defendant makes an insufficient showing on one of them. *Id.* at 697, 80 L.Ed.2d at 699. The *Strickland* test is also the standard for measuring ineffective assistance of counsel claims under the North Carolina Constitution. *State v. Swann*, 322 N.C. 666, 370 S.E.2d 533 (1988); *State v. Braswell*, 312 N.C. 553, 324 S.E.2d 241 (1985).

In order to satisfy the performance component of the *Strickland* test, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688, 80 L.Ed.2d 674, 693 (1984). The defendant must identify the acts or omissions of counsel that were the result of unreasonable professional judgment. *Id.* at 690, 80 L.Ed.2d at 695. A reviewing court must then judge the reasonableness of counsel's challenged conduct in light of the facts and circumstances of the particular case and determine whether the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* In making this determination, counsel is strongly presumed to have rendered adequate assistance and exercised reasonable professional judgment. *Id.*

Here, defendant essentially contends that she was prejudiced by defense counsel's failure to present evidence. Defendant argues that there was ample evidence from which to present an efficient defense. Defendant contends that she provided defense counsel with a list of potential defense witnesses who were willing to testify on her behalf. These witnesses included: 1) Ms. Penny Stephens, a former tax clerk who worked with defendant prior to the investigation of these charges; 2) Ms. Brenda Fairley, a tax clerk

who worked with defendant at the time these charges were investigated; and 3) Mr. Thomas Jones, a delinquent tax collector who also worked with defendant.

Defendant contends that Ms. Stephens would have testified that defendant's supervisor, Mr. Foley, had made offensive and inappropriate comments to defendant. Ms. Stephens would also have testified that Mr. Foley had threatened her at one time saying, "the next time money is taken, I am going to pin it on you." Defendant argues that Ms. Fairley would have testified that she had seen Mr. Foley enter the computer and "backdate information to make it appear that tax money had been paid on an earlier date." Ms. Fairley would also have testified that Mr. Foley had asked her to credit a tax account without the proper documentation. Finally, defendant contends that Mr. Jones would have testified concerning the operation of the tax department and its computer system.

Defendant also provided defense counsel with the names of two prominent witnesses who were willing to testify to her good character and her reputation for honesty. Defendant also argues that since the State's case consisted entirely of circumstantial evidence, defense counsel should have allowed defendant to take the stand and refute the charges in her own words. Defendant contends that she should have been allowed to take the stand because she had no prior criminal history with which the State could have impeached her.

With the exception of the two character witnesses, we are not persuaded that any of the other potential defense witnesses' testimony was relevant to defendant's charges. It is clear that defense counsel could have presented a defense with the testimony of the potential defense witnesses. The question we must answer is whether defense counsel's failure to present evidence in defendant's defense was outside the exercise of reasonable professional judgment. We hold that it was not.

The State's case against defendant was based entirely upon circumstantial evidence. There was no incontrovertible eyewitness evidence that showed that defendant had misapplied or embezzled tax department funds. Rather, the State's case was based entirely upon a series of deductions drawn from various tax department ledgers, receipts and work documents. In deciding not to present evidence, defense counsel apparently made a strategic judgment

that the jury would not convict defendant solely on the basis of this circumstantial evidence. Although in hindsight we might conclude that defense counsel may have made an error in judgment, defense counsel's decision not to present evidence was not unreasonable in light of the facts and circumstances of this case.

Although defendant wanted to testify in her own behalf to assert her innocence, Agent Underwood from the State Bureau of Investigation had already testified that defendant steadfastly maintained her innocence during both his initial interview with defendant and after defendant was arrested. Defendant's exculpatory statements were put before the jury without defendant having to answer any questions on cross-examination. The usefulness of defendant's potential defense witnesses is questionable at best. Much of their testimony was cumulative because evidence similar to the statements in their affidavits was admitted through other witnesses who testified at trial. Furthermore, defendant's trial counsel gained a significant tactical advantage in deciding not to present evidence. When a defendant elects not to present evidence, the defendant may both open and close oral arguments to the jury. General Rules of Practice for Superior and District Courts, Rule 10. The opportunity to both open and close oral arguments to the jury can be particularly significant when as here, the State's case is based purely on circumstantial evidence. In *Strickland*, the Supreme Court stated that:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Strickland v. Washington*, 466 U.S. 668, 689, 80 L.Ed.2d 674, 694 (1984). Accordingly, we conclude that defense counsel's decision not to present evidence in these circumstances was not unreasonable professional judgment.

## II.

[2] Defendant contends that the trial court erred in admitting certain tax department records into evidence. These records included cancelled checks with defendant's initials on them that were not credited to the appropriate accounts, defendant's adding machine

tape listing the cancelled checks and showing that defendant was the clerk who had processed them, defendant's collection summary reports which showed that she did not indicate any cash overage or shortage on the days that she received the checks, the returned account confirmation letters which initiated the investigation, and other various records of the tax department. Defendant argues that these records should have been excluded because they were not properly authenticated under the business records exception to the hearsay rule, G.S. 8C-1, Rule 803(6). Defendant contends that the State was required to show that the various records were made at or near the time of the transactions, or that the records were kept in the tax department's regular course of business. We disagree.

We need not discuss separately the admission of each disputed tax department record. Our analysis applies equally to all of the records at issue here. The tax department is a public office and its records are admissible under the public records exception to the hearsay rule. G.S. 8C-1, Rule 803(8). Rule 803(8) provides for the admission of "records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency . . . ." Here, all of the tax department records that were admitted were records setting forth the activities of the tax department. Defendant's contention that these records were improperly authenticated is without merit. All that is required to authenticate public records is evidence that "a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept." G.S. 8C-1, Rule 901(b)(7). The authenticity of an original public record or document may be proved by the testimony of its official custodian that it is a part of the records or files of the custodian's office. 1 L. Brandis, *Brandis on North Carolina Evidence*, § 153 p. 702 (1988); G.S. 8C-1, Rule 901, Advisory Committee's Note Example 7 ("Public records are regularly authenticated by proof of custody, without more").

Here, the State authenticated the challenged records through defendant's supervisor, Mr. Foley. Mr. Foley was the collection supervisor of the tax department and was responsible for keeping the records that are at issue here. Mr. Foley identified each of the challenged records as records belonging to the tax department and he testified that each record was generated and maintained by the tax department. Mr. Foley's testimony was sufficient to

authenticate public records under Rule 901(b)(7). Accordingly, we conclude that the trial court properly admitted the challenged tax department records under the public record exception to the hearsay rule.

For the reasons stated, we find no error in the judgment of the trial court.

No error.

Judges ORR and GREENE concur.