STATE OF NORTH CAROLINA v. CHARLES EDWARD HARDY

No. 903SC1184

(Filed 15 October 1991)

**1. Rape and Allied Offenses § 5 (NCI3d)— intercourse with stepdaughter — constructive force**

The State presented sufficient evidence that defendant's acts of sexual intercourse with his stepdaughter were by force and against her will because the jury could reasonably infer that defendant used his position of power to constructively force the stepdaughter's participation in sexual intercourse where it tended to show that defendant began abusing the stepdaughter when she was only fifteen years old; each episode of abuse occurred while the stepdaughter lived with defendant as an unemancipated minor in the defendant's trailer and subject to his parental authority; in each incident the defendant was either silent or at most said "Shh" prior to removing the stepdaughter's underwear and engaging in sexual intercourse with her; and the stepdaughter never gave her consent and defendant never asked for it.

Am Jur 2d, Rape §§ 4-6, 38, 91.

**2. Rape and Allied Offenses § 5 (NCI3d)— child victim — date of offenses — specificity not required**

The State's evidence was sufficient to support defendant's conviction on two charges of second degree rape of his fifteen-year-old stepdaughter, although the victim was unable to identify a specific date on which each of the offenses occurred, where the indictment alleged that the offenses occurred between July 1989 and 22 October 1989, and the victim testified that defendant's abuse of her did not start until after they moved into a new trailer and that this move occurred "in the middle of July or early August."

Am Jur 2d, Rape § 88.

**3. Criminal Law § 89.3 (NCI3d)— letter admissible for corroboration**

A letter written by an alleged rape and indecent liberties victim to her pastor's wife in which the victim stated that her stepfather was forcing her to have sexual intercourse with

STATE v. HARDY

[104 N.C. App. 226 (1991)]

him was properly admitted to corroborate the victim's prior testimony.

**Am Jur 2d, Rape §§ 97-99.**

4. **Criminal Law § 169.2 (NCI3d) — noncorroborative testimony — objections sustained — absence of prejudice**

Defendant was not prejudiced by noncorroborative testimony where the trial court sustained defendant's objection to the testimony.

**Am Jur 2d, Trial § 395.**

5. **Criminal Law § 169.2 (NCI3d) — noncorroborative testimony — curative instruction**

Assuming that a portion of a rape and indecent liberties victim's statement to the investigating officer did not corroborate the victim's testimony, the admission of this portion of the statement for corroborative purposes was rendered harmless by the trial court's curative instruction to the jury.

**Am Jur 2d, Trial §§ 1478, 1480.**

6. **Rape and Allied Offenses § 4 (NCI3d) — post traumatic stress syndrome — admissibility**

Expert testimony that an alleged rape and indecent liberties victim suffered from post traumatic stress syndrome was properly admitted.

**Am Jur 2d, Rape § 68.5.**

**Admissibility, at criminal prosecution of expert testimony on rape trauma syndrome. 42 ALR4th 879.**

7. **Rape and Allied Offenses § 4.3 (NCI3d) — victim's school disciplinary records — exclusion as harmless error**

Any error in the trial court's exclusion of evidence of a rape and indecent liberties victim's school disciplinary records, including suspension reports, was harmless where no possibility exists that the outcome of the trial would have been any different had the records been admitted.

**Am Jur 2d, Rape § 55.**

8. **Rape and Allied Offenses § 6 (NCI3d)— parent-child relationship—constructive force—sufficiency of instructions**

The trial court in a prosecution of defendant. for second degree rape of his stepdaughter sufficiently instructed the jury on constructive force arising from the parent-child relationship and did not err in refusing to give additional instructions requested by defendant.

**Am Jur 2d, Rape § 108.**

9. **Criminal Law § 1092 (NCI4th)— presumptive sentence—no right of appeal**

The Fair Sentencing Act does not allow appeal of a presumptive sentence as of right.

**Am Jur 2d, Appeal and Error § 867.**

APPEAL by defendant from judgments entered 3 March 1990 by *Judge Frank R. Brown* in PITT County Superior Court. Heard in the Court of Appeals 17 September 1991.

Defendant was indicted and convicted of three counts of second degree rape and three counts of taking indecent liberties with a child. The defendant was sentenced to twelve years imprisonment for each second degree rape conviction, two of which run consecutively. He was also sentenced to three concurrent terms of three years imprisonment for the convictions of taking indecent liberties with a child to be served at the expiration of the two twelve year consecutive sentences for. the second degree rape conviction.

Defendant's fifteen year old step-daughter testified for the State. Because of her young age and the very nature of the offenses charged, we will refer to defendant's step-daughter as "victim." In the summer of 1989 the victim lived in Colonial Trailer Park with her mother, her sisters and the defendant. During May, June and July the family resided in a trailer (old trailer) on Rawl Road, and in the middle of July or early August moved to another trailer (new trailer) in the same trailer park. One night while the victim was still living in the old trailer she and her sister walked to the store. The defendant approached the victim and said, "I want you." He then asked the victim "would [she] tell" and the victim did not respond. The victim testified, "at that time I didn't pay it no mind because he was kind of high. . . ." The defendant also

STATE v. HARDY

[104 N.C. App. 226 (1991)]

walked into the victim's room one night, "but he didn't never do nothing because [the victim's] mother got up and she came in the room . . . ."

The victim also testified that on five or six different occasions after she moved into the new trailer, the defendant would go into her bedroom while "high" from alcohol. He would only be wearing his T-shirt and his underwear. The victim testified that the defendant "used to come back there when my mother was asleep, and he would come in there and he'll want to be getting in — getting on the bed with me." The defendant, without speaking except to say "Shh," would then take off the victim's underwear, "get on top of [the victim]," and "put his penis inside [her]." The victim testified that inside her meant "in [her] vagina." At no time did the victim want the defendant to have intercourse with her. The defendant told the victim "if [she] told [her] mother would throw [her] out and nobody would believe [her]." The victim did not fight the defendant because she was afraid of him and "[she] figured he would hurt [her]." The defendant also told her, "that if he wasn't married to [the victim's] mother he'll be all mines [sic]." In addition, the defendant gave "[the victim] money to keep [her] mouth shut . . . and said if [her] mother asked [her] where did [she] get the money from don't tell her." The victim also testified that while the defendant never threatened her, she was afraid of him "because [she] figure [sic] if [she] told it something would happen to [her]."

The victim further testified that she had seen the defendant fight with her mother and that at times she had feared for her mother's life. The victim never told her mother what the defendant had done to her because "[she] thought maybe something would happen to me."

In October 1989 the victim told Mrs. Bright, one of her teachers, a little bit about what was happening, "but wouldn't really tell her exactly what happened." Mrs. Bright sent the victim to Mrs. Moore, a guidance counselor. During the same summer the victim began attending the Community Christian Church in Winterville. She wrote the pastor's wife a letter telling her that "[m]y stepfather forces my [sic] to have sexual intercourse" with him. She wrote the letter because she thought she needed help. The victim also talked with two workers at the Department of Social Services and an employee at the Farmville Mental Health Center.

Nancy Cleghorn, staff psychologist at the Pitt County Mental Health Center and the Lenoir Mental Health Center, testified for the State. Ms. Cleghorn began seeing the victim on 4 January 1990 "to evaluate her need and provide treatment as appropriate." Ms. Cleghorn testified that the victim suffered from symptoms consistent with a child who had been sexually abused. She stated:

> Symptoms that she reported included fears; easily startled; she had reported some sleep disturbance when she was in the family home; the sleep had improved since living with her maternal aunt, but . . . she's continued to report nightmares involving themes of violence, nightmares of her stepfather killing her mother; decreased concentration was reported and this seemed to go along with the decrease in her academic performance at school; her memories about things that had occurred in the family home; the abuse that she reported to me would intrusively come into her mind even when she tried not to think about it. And there was also when I conducted a mental status exam, I felt as though her mood showed evidence of depression and anxiety.

Ms. Cleghorn also testified concerning "child abuse accommodation syndrome" or delayed reporting.

The defendant testified that the victim "ain't never act [sic] like she was scared of me. I ain't never gave her no reason for her to be scared of me." He also testified that he never told the victim that he wanted to have sex with her and that he never had any sexual contact with the victim. The defendant admitted smoking "reefer" and drinking liquor and beer to get high. From judgment entered on the guilty verdict, defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Teresa L. White, for the State.*

*Robin L. Fornes for defendant-appellant.*

EAGLES, Judge.

I

The defendant first argues that the trial court erred by denying defendant's motion to dismiss the charges because of insufficient evidence. We disagree.

**STATE v. HARDY**

[104 N.C. App. 226 (1991)]

It is well settled that upon a motion to dismiss in a criminal action, all the evidence admitted, whether competent or incompetent, must be considered by the trial judge in the light most favorable to the State, giving the State the benefit of every reasonable inference that might be drawn therefrom. Any contradictions or discrepancies in the evidence are for resolution by the jury.

*State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984) (citing *State v. Witherspoon*, 293 N.C. 321, 237 S.E.2d 822 (1977)).

A

[1] Defendant argues that the State failed to show that the alleged sexual intercourse was by force and against the victim's will. This argument is controlled by *State v. Etheridge*, 319 N.C. 34, 352 S.E.2d 673 (1987). In *Etheridge*, the Supreme Court addressed the proof necessary to support a conviction for second-degree sexual offense. Specifically, the court addressed the requirements of the phrase "[b]y force and against the will of the other person." The language construed is identical to the phrase found in the definition of second-degree rape. *Id.* at 44, 352 S.E.2d at 680; G.S. § 14-27.3. The Court stated:

The phrase "by force and against the will of the other person" means the same as it did at common law when it was used to describe an element of rape. *State v. Locklear*, 304 N.C. 534, 284 S.E.2d 500 (1981). The requisite force may be established either by actual, physical force or by constructive force in the form of fear, fright, or coercion. *State v. Hines*, 286 N.C. 377, 211 S.E.2d 201 (1975). Constructive force is demonstrated by proof of threats or other actions by the defendant which compel the victim's submission to sexual acts. *See State v. Barnes*, 287 N.C. 102, 214 S.E.2d 56, *cert. denied*, 423 U.S. 933, 46 L.Ed.2d 264 (1975) (threat of serious bodily injury sufficient to constitute constructive force). Threats need not be explicit so long as the totality of circumstances allows a reasonable inference that such compulsion was the unspoken purpose of the threat. *State v. Barnette*, 304 N.C. 447, 284 S.E.2d 298 (1981).

*Etheridge* at 45, 352 S.E.2d at 680. The *Etheridge* Court then applied the constructive force doctrine to the defendant's acts. In *Etheridge*, the defendant, the minor child's father, had made

illicit sexual advances toward his son beginning when the son was eight years old. *Id.* at 47, 352 S.E.2d at 681. The abuse occurred while the child lived as an unemancipated minor in the defendant's household, subject to the defendant's parental authority and discipline. *Id.* at 47-48, 352 S.E.2d at 681. In the incident charged the defendant instructed his son "[d]o it anyway" when his son initially refused to disrobe. *Id.* at 48, 352 S.E.2d at 681. Finding constructive force to be present the Court stated:

> It is nonetheless reasonable to conclude that these words carried a great deal more menace than is apparent on the surface, . . . . The child's knowledge of his [parent's] power may alone induce fear sufficient to overcome his will to resist, and the child may acquiesce rather than risk his [parent's] wrath. As one commentator observes, force can be understood in some contexts as the power one need not use. Estrich, *Rape*, 95 Yale L.J. 1087, 1115 (1986).

> In such cases the parent wields authority as another assailant might wield a weapon. The authority itself intimidates; the implicit threat to exercise it coerces. Coercion, as stated above, is a form of constructive force.

*Etheridge* at 48, 352 S.E.2d at 681-682.

Here, constructive force can be reasonably inferred from the circumstances surrounding the parent-child relationship. The defendant, the victim's step-father, began abusing the victim when she was only fifteen years old. Each episode of abuse occurred while the victim lived with the defendant as an unemancipated minor in the defendant's trailer and subject to his parental authority. In each incident the defendant was either silent or at most said "Shh" while climbing on top of his step-daughter and engaging in sexual intercourse with her. She never gave her consent and the defendant never asked for it. When considered with the totality of the circumstances of this case, it is reasonable to conclude that by removing her underwear and physically climbing in on top of the victim, either silently or with a "Shh," the defendant's actions "carried a great deal more menace than is apparent on the surface . . . ." *Etheridge* at 48, 352 S.E.2d at 681. "[W]e hold that the state presented sufficient evidence from which a jury could reasonably infer that the defendant used his position of power to force his [step-daughter] to participat[e] in sexual [intercourse]." *Id.*

STATE v. HARDY

[104 N.C. App. 226 (1991)]

B

**[2]** Defendant next argues that two of the second degree rape charges (90 CRS 1786 and 90 CRS 1787) should have been dismissed "because of a lack of speci[f]icity and proof as to when the charges occurred." This argument is without merit.

In *State v. Wood*, 311 N.C. 739, 319 S.E.2d 247 (1984), the defendant was convicted of first degree rape and two counts of taking indecent liberties with a minor. *Id.* at 740, 319 S.E.2d at 247. On appeal the defendant argued that the evidence was insufficient to convict him of rape because the State failed to prove the specific date of the rape as alleged in the indictment. *Id.* at 742, 319 S.E.2d at 249. The victim had testified that the offense occurred on a weekend sometime prior to Memorial Day and that she was still in school. *Id.* The court rejected the defendant's argument:

> We have stated repeatedly that in the interest of justice and recognizing that young children cannot be expected to be exact regarding times and dates, a child's uncertainty as to time or date upon which the offense charged was committed goes to the weight rather than the admissibility of evidence. *State v. Effler*, 309 N.C. 742, 309 S.E.2d 203 (1983); *State v. King*, 256 N.C. 236, 123 S.E.2d 486 (1962). *See: State v. Sills*, 311 N.C. 370, 317 S.E.2d 379 (1984). Nonsuit may not be allowed on the ground that the State's evidence fails to fix any definite time for the offense where there is sufficient evidence that defendant committed each essential act of the offense. *Id.*

*Id.* at 742, 319 S.E.2d at 249.

*State v. Swann*, 322 N.C. 666, 370 S.E.2d 533 (1988), is also instructive. In *Swann*, the defendant sexually assaulted an eleven year old child. *Id.* at 669, 370 S.E.2d at 535. The child was unable to remember the exact date of the assaults. However, he was able to identify a specific event around which the assaults occurred. The child testified that the incidents occurred shortly after his brother was born. *Id.* at 674, 370 S.E.2d at 538. The victim's mother testified that the first incident occurred three to four weeks after the victim's brother's birth and stated the date of that birth. *Id.* at 674-675, 370 S.E.2d at 538. The Court held that the testimony was sufficient to submit the charges to the jury. *Id.* at 675, 370 S.E.2d at 538.

Here, both indictments attacked by the defendant state the date of offense as "[b]etween" July 1989 and 22 October 1989. Lisa was unable to identify a specific date on which each of the offenses occurred. However, Lisa was able to relate the assaults to specific events in her life. Lisa testified, "[w]ell, nothing really started until we moved to the new trailer." She also testified that she moved into the new trailer "in the middle of July [or] early August." This testimony was sufficiently precise to submit the charges to the jury.

C

Defendant also assigns as error the trial court's denial of the defendant's motion to dismiss the charges of taking indecent liberties with a child. However, the defendant has failed to support his assignment with reason, argument or authority. Accordingly, this assignment of error has been abandoned. N.C.R. App. P. 28(c).

II

Defendant next argues the trial court committed reversible error by allowing into evidence out of court statements made by the victim. We find no reversible error here.

A

[3] First, the defendant claims the letter that the victim gave to the pastor's wife of the Community Christian Church in Winterville was inadmissible hearsay and was not corroborative of the victim's prior testimony. Specifically, the defendant objects to that part of the letter which states, "my step-father forces my [sic] to have sexual intercourse with me [sic] but I don't want that. . . ." This contention is without merit.

> One of the most widely used and well-recognized methods of strengthening the credibility of a witness is by the admission of prior consistent statements. *State v. Carter*, 293 N.C. 532, 238 S.E.2d 493 (1977). If previous statements offered in corroboration are generally consistent with the witness's testimony, slight variations between them will not render the statements inadmissible. Such variations only affect the credibility of the evidence which is always for the jury. [Citations omitted.]

*State v. Locklear*, 320 N.C. 754, 761-762, 360 S.E.2d 682, 686 (1987).

**STATE v. HARDY**

[104 N.C. App. 226 (1991)]

Upon direct examination the victim testified as follows:

Q: What would happen when he would come in your room?

A: Well, he'll get—he'll get on me.

Q: Now, would you have any clothes on or would he have any clothes on?

A: I had my night clothes on.

Q: What would happen to your night clothes?

A: They still be on.

Q: And what would the defendant do?

A: Take off my underwear.

Q: Would he say anything to you?

A: No.

Q: And what would he do to you?

A: Get on top of me.

Q: What would happen then?

A: He put his penis inside me,

Q: Now, . . . ., was this with your permission?

A: No.

Q: Something you wanted him to do?

A: No.

The letter corroborates the victim's testimony and was therefore properly admitted into evidence.

B

[4] Defendant also argues that it was prejudicial error for the trial court to deny the defendant's motion to strike the testimony of the victim's aunt, Irene Harris. This contention is also without merit. Ms. Harris testified as follows:

Q: Did Lisa ever express any fear of the defendant to you?

STATE v. HARDY

[104 N.C. App. 226 (1991)]

MR. MCGLAUFLIN: Objection, Your Honor.

THE COURT: Overruled.

BY MRS. AYCOCK:

Q: You may answer.

A: Yes, she did.

Q: What did she say about it as far as the fear or as far as her fear of the defendant?

A: She said that she was scared that he would kill her.

MR. MCGLAUFLIN: Objection, Your Honor, move to strike.

THE COURT: Overruled, motion denied.

BY MRS. AYCOCK:

Q: What else did she say about this?

A: And I asked her —

THE COURT: Well, she asked you what else she said about that.

Q: You may answer.

A: I asked her —

THE COURT: All right. Objection sustained.

BY MRS. AYCOCK:

Q: Ms. Harris, have you ever been a witness before?

A: No, I have not.

Q: Did you ask [the victim] why she was afraid of him?

A: Yes, I did.

Q: What did she tell you?

A: She said with him smoking reefer and with the films that she have seen at school —

THE COURT: Well, I am going to sustain the objection. If you are offering this to corroborate the witness, the witness has not testified to any of these things this lady has said, and I am going to sustain the defendant's objection. If you

want to corroborate her, you have to corroborate what the girl said in the courtroom.

" 'A party may not take exception to a ruling of the court in his favor. . . .' " *In re McCraw*, 3 N.C. App. 390, 394, 165 S.E.2d 1, 4 (1969). Here, the defendant's objection was sustained. This assignment of error is overruled.

## C

[5] Defendant also objects to the trial court allowing the investigating officer to read into evidence the victim's statement as corroborative evidence. This argument fails as well.

The statement, in pertinent part, reads as follows: "So about a week later he came into my bedroom and was taking off his clothes but I know [sic] idea what happen until I really woke up. So when I finally woke up he had his hand over my mouth." Assuming *arguendo* that this portion of the statement was not corroborative, the trial court gave a curative instruction to the jury which cured any error:

The Court wants to instruct you that when evidence has been received tending to show that at an earlier time a witness made a statement which may be consistent or may conflict with her testimony at this trial, you must not consider such earlier statement as evidence of the truth of what was said at that earlier time because it was not made under oath at this trial.

If you believe that such earlier statement was made and that it is consistent or does conflict with the testimony of [the victim] at this trial, then you may consider this together with all other facts and circumstances bearing upon the witness' truthfulness in deciding whether you will believe or disbelieve her testimony at this trial. You may not consider it for any other purpose.

This assignment is overruled.

## III

[6] By his next assignment of error, the defendant asks this Court to reconsider the admissibility of testimony on post traumatic stress syndrome. As the defendant concedes, this issue has been resolved. We are bound by *State v. Strickland*, 96 N.C. App. 642, 387 S.E.2d

62, *disc. rev. denied*, 326 N.C. 486, 392 S.E.2d 100 (1990), and *State v. Hall*, 98 N.C. App. 1, 390 S.E.2d 169, *disc. rev. allowed*, 327 N.C. 486, 397 S.E.2d 228 (1990). *In re Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (one panel of the Court of Appeals is bound by a prior decision of another panel of the Court addressing the same issue, although in a different case, unless the prior decision has been overturned by a higher court).

## IV

[7] Defendant also argues that the trial court erred by not allowing the defendant to present evidence of the victim's school disciplinary records including suspension reports. "An error is not prejudicial unless a different result would have been reached at the trial if the error in question had not been committed. N.C. Gen. Stat. § 15A-1443." *State v. Smith*, 87 N.C. App. 217, 222, 360 S.E.2d 495, 498 (1987), *disc. review denied*, 321 N.C. 478, 364 S.E.2d 667 (1988). Assuming, *arguendo*, that the evidence was relevant, "the defendant here has not persuaded us that there exists any reasonable possibility that the outcome of the trial would have been any different had the testimony . . . been allowed." *Id.* at 222, 360 S.E.2d at 498. This assignment of error is overruled.

## V

[8] Defendant next argues the trial court incorrectly instructed the jury on the offense of second degree rape. We disagree. The trial judge, in part, instructed the jury:

> For you to find the defendant guilty of second-degree rape, the State must prove three things beyond a reasonable doubt.

> * * *

> Second, that the defendant used or threatened to use force sufficient to overcome any resistance the victim might make. The force necessary to constitute rape need not be actual physical force. Fear or coercion may take the place of physical force. And when you come to consider the force sufficient to overcome any resistance the victim might make, you may consider that sexual activity between a parent and a minor child is not comparable to sexual activity between two adults. The youth and vulnerability of children coupled with the power inherent in a parent's position of authority creates a unique situation of dominance and control in which explicit threats

and displays of force are not necessary to effect the abuser's purpose.

In his brief, "[t]he defendant readily admits that this is a correct statement of the law" as found in *State v. Etheridge,* 319 N.C. 34, 352 S.E.2d 673 (1987). However, the defendant requested the following additional instruction:

> However, the totality of the circumstances concerning the relationship between a parent and a child must be considered in determining whether the parent's position of authority was sufficient in and of itself to overcome any resistance made by the child to the sexual activity. Such circumstances would include the age of the child; when sexual activity between the parent and child first began; the nature and extent of discipline and punishment of the child by the parent prior to the sexual activity; the presence or the absence of other parental figures in the household, and any commands uttered toward the child by the parent at the time of the sexual activity which would tend to indicate punishment was imminent if the child did not engage in sexual activity with the parent.

Under the facts and circumstances of this case the instruction given by the trial court adequately presented the law in compliance with *Etheridge.* This assignment of error is overruled.

## VI

[9]  Finally, the defendant claims the trial court committed reversible error in sentencing the defendant to the presumptive prison terms provided by the Fair Sentencing Act. G.S. § 15A-1444(a1) provides:

> A defendant who has been found guilty, or entered a plea of guilty or no contest to a felony, is entitled to appeal as a matter of right the issue of whether his sentence is supported by the evidence introduced at the trial and sentencing hearing only if the prison term of the sentence exceeds the presumptive term set by G.S. 15A-1340.4, and if the judge was required to make findings as to aggravating or mitigating factors pursuant to this Article. Otherwise, he is not entitled to appeal this issue as a matter of right but may petition the appellate division for review of this issue by writ of certiorari.

Simply stated, "[t]he [Fair Sentencing] Act does not allow appeal of a presumptive sentence as of right." *State v. Cain,* 79 N.C. App. 35, 49, 338 S.E.2d 898, 907, *disc. review denied,* 316 N.C. 380, 342 S.E.2d 899 (1986). Here, the trial judge imposed the presumptive sentence for each of the convictions. Accordingly, this assignment of error is overruled.

No error.

Judges JOHNSON and PARKER concur.