595 S.E.2d 858

**The STATE, Respondent,**

v.

**Thomas Wayne RICHARDSON, Appellant.**

**No. 3773.**

Court of Appeals of South Carolina.

Submitted Dec. 8, 2003.

Decided April 5, 2004.

Rehearing Denied May 20, 2004.

Richard Harold Warder, of Greenville, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Assistant Attorney General Deborah R.J. Shupe, of Columbia; and Solicitor Robert M. Ariail, of Greenville, for Respondent.

CURETON, A.J.:

Thomas Wayne Richardson appeals his convictions for criminal sexual conduct, third degree and criminal sexual conduct with a minor, second degree. We affirm.

## FACTS

In June 1999, Richardson met SS [1], pastor of a Greenville church, during revival services at another local church. Richardson befriended SS by informing him that he represented the Richardson Family Foundation (the "Foundation"), an organization that helped churches and individuals obtain federally funded grants. Richardson participated in several services at SS's church.

KS, SS's sixteen-year-old daughter, met Richardson through her parents. Prior to this meeting, KS had heard Richardson speak at her father's church several times. During these speaking engagements, Richardson informed the congregation that he helped churches and intended to help rebuild the church and its related facilities.

On August 20, 1999, KS's parents asked her to provide administrative help to Richardson. On that day, Richardson was working in his hotel room. KS testified Richardson made sexual advances when the two were alone. Immediately after she refused his requests, KS's parents returned to the hotel room. She did not tell her parents about what had happened because she was afraid and in shock.

The next day, SS invited Richardson to stay at his home. KS, her parents, and her seven brothers and sisters also lived in the home, including TS, KS's fourteen-year-old sister. KS testified she helped Richardson with some of his paperwork while he was a guest. During one of these sessions, Richardson demanded that she go into the closet in her room and pull her pants down. When she questioned him, he responded that he would not help her church or anybody in the ministry if she told anyone. Richardson then had sexual intercourse with her.

---

1. We use the parties' initials to further protect the identity of the minor victims in this case.

KS testified Richardson asked her to perform oral sex on another occasion. She further stated that Richardson came to her room several times and had sexual intercourse with her. When KS asked Richardson if what he was doing was wrong, Richardson claimed it was not wrong and justified his response with scriptures. During this time, Richardson told her the people in the ministry would not get anything if she did not comply or if she told anyone.

KS claimed the encounters with Richardson affected her performance in school and caused her to have headaches and stomach aches. On October 28, 1999, KS broke down and told her school principal that Richardson raped her at the family home. TS also admitted to being sexually assaulted by Richardson.

TS revealed similar behavior by Richardson. She testified that one evening Richardson entered her room and made sexual advances. TS refused his requests. Later in the evening, Richardson came to her room while she was asleep. He then got into her bed and began touching her. While he was doing this, he told TS that if she told anyone he would not help her church or her family. According to TS, Richardson removed her clothing and began to have sexual intercourse with her. When she asked Richardson to stop, he reiterated that he would not do anything for the church or her family if she did not comply. TS testified Richardson came to her room at night on several other occasions. She did not tell her parents about the incidents because she was embarrassed and afraid to say anything.

Following the discussions with the girls and their school principal, SS and his wife immediately informed the Greenville County Sheriff's Department about what had happened to their daughters. An investigation was conducted which included both KS and TS undergoing a sexual assault examination. After the investigation was completed, a Greenville County grand jury indicted Richardson for one count of criminal sexual conduct, third degree as to KS and one count of criminal sexual conduct with a minor, second degree as to TS.

Richardson testified in his own defense. He denied raping or molesting either KS or TS, but admitted to having an affair with their mother.

The jury convicted Richardson of criminal sexual conduct, third-degree and criminal sexual conduct with a minor, second-degree. The judge sentenced Richardson to five years imprisonment for criminal sexual conduct, third degree and ten years imprisonment for criminal sexual conduct with a minor, second-degree. The sentences were to be served concurrently. Richardson appeals.

## DISCUSSION

### I.

Richardson argues the trial court erred by denying his motions for a directed verdict concerning the charge of criminal sexual conduct, third degree. He contends the evidence failed to establish that he used force or coercion to accomplish a sexual battery on KS.

At the conclusion of the State's case, Richardson moved for a directed verdict as to the charge of criminal sexual conduct, third degree. He asserted there was no evidence of force or coercion. Specifically, he contended the element of coercion required "threats of violence." He also argued that even if the evidence could be construed that Richardson persuaded KS to engage in sexual intercourse, persuasion alone was not sufficient to constitute coercion. At the conclusion of the case, Richardson renewed his motion. The trial judge denied both motions.

When reviewing a denial of a directed verdict, this Court must view the evidence and all reasonable inferences in the light most favorable to the State. *State v. Burdette*, 335 S.C. 34, 46, 515 S.E.2d 525, 531 (1999); *State v. Morgan*, 352 S.C. 359, 364, 574 S.E.2d 203, 205 (Ct.App.2002). If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, we must find the case was properly submitted to the jury. *State v. Pinckney*, 339 S.C. 346, 349, 529 S.E.2d 526, 527 (2000). A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *State v. McKnight*,

352 S.C. 635, 642, 576 S.E.2d 168, 171 (2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 101, 157 L.Ed.2d 36 (2003). Therefore, "where the facts of the case, even if proved, do not constitute the alleged criminal conduct, a directed verdict must be granted." *State v. Jackson,* 338 S.C. 565, 569, 527 S.E.2d 367, 369 (Ct.App.2000).

"A person is guilty of criminal sexual conduct in the third degree if the actor engages in sexual battery with the victim and ... [t]he actor uses force or coercion to accomplish the sexual battery in the absence of aggravating circumstances." S.C.Code Ann. § 16–3–654(1)(a) (2003); *see State v. Ervin,* 333 S.C. 351, 354, 510 S.E.2d 220, 222 (Ct.App.1998) ("Criminal sexual conduct in the third degree specifies the actor must use force or coercion without aggravating circumstances to accomplish the sexual battery.").

■ Our Supreme Court has found that "force" and "coercion" as used in section 16–3–654 have "basically the same meaning." *State v. Hamilton,* 276 S.C. 173, 178, 276 S.E.2d 784, 786 (1981). "They 'mean to make a person ... follow a prescribed and dictated course; ... to inflict or impose: force one's will on someone.' " *Id.* (quoting *American Heritage Dictionary* 513). The State, in order to prove criminal sexual conduct in any degree, must prove " 'that the sexual battery occurred under circumstances where the victim's consent was lacking.' " *Id.* (quoting *State v. Cox,* 274 S.C. 624, 628, 266 S.E.2d 784, 786 (1980)).

Viewed in the light most favorable to the State, the evidence was sufficient to submit to the jury the charge of criminal sexual conduct, third degree. Richardson presented himself as someone who could provide significant financial assistance to KS's family and her church. By inviting Richardson into his home, SS conveyed to his family that he was interested in what Richardson could offer. KS testified, and her parents corroborated, that she had been raised in the church and taught to respect her elders and people in positions of authority. Based on these values, she was afraid that she would be punished if she did not do what Richardson asked her to do. Furthermore, KS testified that Richardson had sexual intercourse with her despite her refusals and her questioning whether he was wrong in what he was doing. According to

KS, Richardson supported his actions by quoting scriptures. KS testified she was also concerned that her family and church would be deprived of Richardson's assistance if she failed to comply with his requests. Additionally, she denied she was a willing participant.

Based on this evidence, a jury could reasonably infer that Richardson used coercion to accomplish the sexual battery on KS. KS viewed Richardson as an authority figure who relied on religion to support his actions. This authority coupled with Richardson's repeated threat to withhold his assistance could have intimidated KS to the point of overcoming her will. *See State v. Hardy,* 104 N.C.App. 226, 409 S.E.2d 96, 98 (1991) ("[A]uthority itself intimidates; the implicit threat to exercise it coerces. Coercion ... is a form of constructive force." (quoting *State v. Etheridge,* 319 N.C. 34, 352 S.E.2d 673, 681–82 (1987))). Although Richardson contends KS consented and never complained, this alone does not entitle him to a directed verdict. Instead, it creates a question of fact in terms of credibility. *See State v. Burroughs,* 328 S.C. 489, 495, 492 S.E.2d 408, 411 (Ct.App.1997) (finding trial court did not err in denying defendant's motion for a directed verdict in case involving criminal sexual conduct, third degree, given credibility question was created where defendant claimed the encounter was consensual and the victim testified she refused and was in fear for her life).

Furthermore, we are not persuaded by Richardson's argument that the evidence "at best ... supports an attempt to convince KS *not to disclose* a sexual relationship, but does not support force or coercion to actually *engage* in one." Initially, we note this specific argument was not raised during Richardson's motion for a directed verdict. As such, we question whether it is preserved for our review. *See State v. Bailey,* 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989) (stating a party cannot argue one theory at trial and a different theory on appeal). In any event, the dichotomy that Richardson attempts to create between statements to prevent a victim from reporting the incident and statements meant to coerce a victim is without merit. Both types of statements may be coercive, especially in this case where KS testified there was a continued pattern of abuse. Even if there were such a distinction, it would not be applicable in this case given KS asserted that she

rebuffed Richardson until he warned her that her non-compliance would jeopardize his offers of help to the church.

## II.

Richardson argues the trial judge erred in admitting prejudicial evidence that had the effect of attacking his character. He contends the solicitor asked him improper questions concerning: (1) whether Richardson considered himself a "man of God," and (2) the nature and history of the Foundation.

On cross-examination, the solicitor asked Richardson whether he considered himself a "man of God." Richardson objected to the question on the ground of relevancy. The judge overruled the objection.

Later in the cross-examination, the solicitor inquired about the nature and history of Richardson's foundation. When the solicitor asked about the Foundation's addresses in other states, Richardson objected. Out of the presence of the jury, Richardson argued the solicitor was trying to question him about matters related to the pending charge of obtaining goods under false pretenses. He contended the charge was not at issue during the trial and it constituted a "bad act" under *Lyle*.[2] The solicitor responded the questions went to Richardson's credibility and established the coercive nature of his acts involving KS and TS. The judge sustained the objection.

The solicitor continued the cross-examination by asking Richardson what representations he had made to the congregations in Greenville. Richardson generally objected. The judge overruled the objection. Richardson testified the Foundation could assist churches in developing programs to obtain government subsidies and grants.

"The relevance, materiality, and admissibility of evidence are matters within the sound discretion of the trial court and a ruling will be disturbed only upon a showing of an abuse of discretion." *State v. Shuler*, 353 S.C. 176, 184, 577 S.E.2d 438, 442 (2003). An abuse of discretion occurs when the trial court's ruling is based on an error of law. *State v. McDonald*, 343 S.C. 319, 325, 540 S.E.2d 464, 467 (2000).

---

2. *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923).

■ Initially, we note Richardson's argument concerning the "man of God" questioning is not preserved for our review. At trial, Richardson objected to this question on the ground of relevancy. On appeal, Richardson asserts the question placed his character at issue. Because Richardson objected to the testimony on a different ground at trial than what he argues on appeal, this argument is not properly before this Court. *See State v. Myers,* 344 S.C. 532, 535, 544 S.E.2d 851, 853 (Ct.App.2001) (finding where defendant objected at trial on the ground that testimony was irrelevant, he could not argue on appeal that testimony improperly placed his character at issue); *see also State v. Dickman,* 341 S.C. 293, 295, 534 S.E.2d 268, 269 (2000) (holding a party cannot argue one ground below and then argue another ground on appeal); *State v. Byram,* 326 S.C. 107, 113, 485 S.E.2d 360, 363 (1997) (stating to be preserved for appeal, an issue must be raised to and ruled on by the trial judge).

■ In any event, we find no error in the admission of the challenged testimony. First, the solicitor's questioning did not elicit "prior bad act" evidence. *See* Rule 404(b), SCRE ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent."); *Lyle,* 125 S.C. at 415–16, 118 S.E. at 807 (South Carolina law precludes evidence of a defendant's prior crimes or other bad acts to prove the defendant's guilt for the crime charged except to establish (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan, or (5) the identity of the perpetrator.). The resulting testimony regarding the history and the work of the Foundation cannot be construed as substantive evidence constituting a "bad act" under *Lyle.* Nor did it establish that Richardson had a propensity to commit criminal sexual conduct. Furthermore, the judge excluded any potential "bad act" evidence when he sustained Richardson's objection to the solicitor's apparent attempt to delve into the charge for obtaining goods under false pretenses.

■ Secondly, the evidence was relevant as to the issue of Richardson's alleged coercion of KS and TS. *See* Rule 401, SCRE (" 'Relevant evidence' means evidence having any tendency to make, the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Because KS and TS testified Richardson threatened to withhold from their church the Foundation's assistance if they did not comply with Richardson's sexual demands, it was relevant as to why they in fact complied. Specifically, the evidence established the basis of Richardson's authority over KS and TS. Furthermore, the testimony was relevant to Richardson's credibility given he denied ever sexually assaulting either KS or TS. *See State v. Outlaw*, 307 S.C. 177, 179, 414 S.E.2d 147, 148 (1992) ("It is well-settled that when a defendant takes the stand he becomes subject to impeachment like any other witness. The defendant may be asked about prior bad acts, not the subject of a conviction, which go to his credibility.") (citations omitted).

In a related argument, Richardson contends that even if the testimony did not involve a prior bad act under *Lyle*, the evidence effectively attacked his character. *See* Rule 404(a), SCRE (stating evidence of a person's character or character trait is inadmissible for the purpose of establishing the person acted in conformity with that particular character or trait on a particular occasion); *State v. Nelson*, 331 S.C. 1, 6, 501 S.E.2d 716, 718–19 (1998) (Both rules [*Lyle* and that regarding character evidence] are grounded on the policy that character evidence is not admissible "for purposes of proving that the accused possesses a criminal character or has a propensity to commit the crime with which he is charged." (quoting *State v. Peake*, 302 S.C. 378, 380, 396 S.E.2d 362, 363 (1990))). We disagree with Richardson's contention and find the evidence concerning the Foundation and Richardson's involvement in it did not serve the purpose of tending to prove Richardson sexually assaulted KS or TS. Rather, the evidence served to substantiate the testimony of KS and TS regarding their reasons for complying with Richardson's demands.

■ Even if the challenged testimony constituted improper "character evidence," any error in its admission was harmless. The testimony was cumulative to other similar testimony that

was admitted without objection. *See State v. Haselden,* 353 S.C. 190, 196, 577 S.E.2d 445, 448 (2003) (stating the erroneous admission of prior bad act evidence is harmless beyond a reasonable doubt if its impact is minimal in the context of the entire record); *State v. Schumpert,* 312 S.C. 502, 507, 435 S.E.2d 859, 862 (1993) (finding any error in admission of evidence cumulative to other unobjected-to evidence is harmless); *State v. Johnson,* 298 S.C. 496, 499, 381 S.E.2d 732, 733 (1989) (stating admission of improper evidence is harmless where it is merely cumulative to other evidence); *see also State v. Reeves,* 301 S.C. 191, 194, 391 S.E.2d 241, 243 (1990) (holding error is harmless when it could not reasonably have affected the result of the trial). KS, TS, SS and his wife all testified without objection that Richardson told them and SS's congregation that the Foundation would assist the church and individuals obtain federal grants to further the ministry. Additionally, the solicitor questioned Richardson without objection about the Foundation.

## III.

■ Richardson argues the trial judge erred in permitting the solicitor to make improper and prejudicial comments to the jury during closing arguments. Specifically, he contends the comments constituted a direct attack on his credibility.

Richardson failed to make any objection during closing arguments. He also failed to move for a mistrial on the ground of improper argument. As such, this issue is not properly preserved for our review. *See State v. Wiggins,* 330 S.C. 538, 550, 500 S.E.2d 489, 496 (1998) (stating failure to object to comments made during argument precludes appellate review of the issue); *State v. Penland,* 275 S.C. 537, 538–39, 273 S.E.2d 765, 766 (1981) (holding defendant's failure to move for a mistrial on grounds of improper argument by the State constitutes waiver of the issue on appeal); *State v. Black,* 319 S.C. 515, 521, 462 S.E.2d 311, 315 (Ct.App.1995) ("The proper course to be pursued when counsel makes an improper argument is for opposing counsel to *immediately* object and to have a record made of the statements or language complained of and to ask the court for a distinct ruling thereon.").

598

Based on the foregoing, Richardson's convictions and sentences are

**AFFIRMED.**

GOOLSBY and ANDERSON, JJ., concur.