**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Donovan Tirrell Brannon, Appellant.

Appellate Case No. 2022-000015

Appeal From Lexington County
Walton J. McLeod, IV, Circuit Court Judge

Unpublished Opinion No. 2025-UP-014
Heard November 14, 2024 – Filed January 15, 2025

**AFFIRMED**

Chief Appellate Defender Robert Michael Dudek, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, and Senior Assistant Attorney General J. Anthony Mabry, all of Columbia; and Solicitor Samuel R. Hubbard, III, of Lexington, all for Respondent.

**PER CURIAM:** Donovan Tirrell Brannon appeals his convictions for the murder of one person and the attempted murder of another. At trial, the evidence showed that Brannon and his associates fired thirty-four shots at a group of people outside a rural nightclub known as "the Spot." Brannon contends the circuit court erred in (1) instructing the jury on accomplice liability and (2) allowing eyewitnesses to testify that Brannon was making hand signs in the club because it permitted the jury to infer the shooting was gang related. We respectfully disagree and affirm.

## STANDARD OF REVIEW

Decisions regarding jury instructions and the admission of evidence will not be disturbed unless the circuit court abused its discretion. *See Clark v. Cantrell*, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000) ("An appellate court will not reverse the trial court's decision regarding jury instructions unless the trial court abused its discretion."); *see also State v. Hatcher*, 392 S.C. 86, 91, 708 S.E.2d 750, 753 (2011) ("The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." (quoting *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006))). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Hatcher*, 392 S.C. at 91, 708 S.E.2d at 753 (quoting *Pagan*, 369 S.C. at 208, 631 S.E.2d at 265).

## ACCOMPLICE LIABILITY INSTRUCTION

"In reviewing jury charges for error, we must consider the court's jury charge as a whole in light of the evidence and issues presented at trial." *State v. Zeigler*, 364 S.C. 94, 106, 610 S.E.2d 859, 865 (Ct. App. 2005). The circuit court does not commit reversible error by instructing the jury on accomplice liability when "there is any evidence that another co-conspirator was the shooter and [the defendant] was acting with him when the [crime] took place." *Barber v. State*, 393 S.C. 232, 237, 712 S.E.2d 436, 439 (2011); *see also State v. Campbell*, 443 S.C. 182, 193, 904 S.E.2d 441, 446–47 (2024) (finding an accomplice liability charge is appropriate when a defendant "personally commit[s] the crime or [is] present at the scene of the crime and intentionally, or through a common design, aid[s], abet[s], or assist[s] in the commission of that crime through some overt act." (quoting *State v. Condrey*, 349 S.C. 184, 194, 562 S.E.2d 320, 325 (Ct. App. 2002))).

A criminal enterprise is rarely reduced to an express agreement, thus an inference that criminals were acting together can, and often does, arise from the surrounding circumstances. *See Campbell*, 443 S.C. at 193, 904 S.E.2d at 447 ("In order to

establish the parties agreed to achieve an illegal purpose, thereby establishing presence by pre-arrangement, the State need not prove a formal expressed agreement, *but rather can prove the same by circumstantial evidence and the conduct of the parties*." (quoting *State v. Gibson*, 390 S.C. 347, 354, 701 S.E.2d 766, 770 (Ct. App. 2010))).  In *Campbell*, our supreme court explained, "We simply cannot ignore evidence of the arrival of two men outside the same apartment building at the same moment before dawn, both armed with rifles and firing into the same apartment."  *Id.* at 195, 904 S.E.2d at 447; *see also id.* at 194, 904 S.E.2d at 447 (finding the State's argument compelling, specifically as to "the remarkable fact that two different individuals . . . were seen fleeing the same crime while carrying rifles, at the precise moment following a massive shooting committed by rifle fire").  The evidence there was "undeniable circumstantial evidence of two people acting as accomplices," and "[t]o suggest the jury could not infer such a scenario . . . [would be] to disregard the maxim that 'it is always for the jury to determine the facts and the inferences that are to be drawn from those facts.'"  *Id.* at 194–95, 904 S.E.2d at 447 (first and second alteration in original) (quoting *State v. Burdette*, S.C. 490, 502, 832 S.E.2d 575, 582 (2019)); *see also id.* at 195, 904 S.E.2d at 448 ("We hold the evidence in the record allowed the jury to reasonably conclude the man [that the witness] saw holding a rifle and getting into the lime green car at the scene of the shooting at the exact time of the shooting was Campbell's accomplice.").

Our supreme court adhered to this rationale in its most recent decision on accomplice liability.  *See State v. Johnson,* Op. No. 28238 (S.C. Sup. Ct. filed Oct. 16, 2024) (Howard Adv. Sh. No. 40 at 10).  There, the court found the evidence allowed the jury to infer the existence of an agreement when two people "arrived together . . . at [the victim's] apartment"; "then ran into [the victim's] apartment[;] and two minutes later, . . . returned to the car together and sped off."  *Id*. at 16.  "As in *Campbell*, the 'remarkable fact' that Johnson spent the day planning his murder of [the victim] and then the person with him pulls the trigger to accomplish the crime 'is undeniable circumstantial evidence of two people acting as accomplices.'"  *Id*. at 17 (quoting *Campbell*, 443 S.C. at 194–95, 904 S.E.2d at 447).

This case is similar to *Campbell* and *Johnson*.  Brandon Jeffery (the victim of the attempted murder) identified Brannon and his co-defendant as the shooters while he was being transported to the hospital on the night of the shooting.  The State presented physical evidence tending to show the fatal shot came from a weapon owned by Brannon or his co-defendant.  Eyewitnesses testified that Brannon and others were brandishing firearms when they approached a group of people outside the Spot and aggressively announced that they were searching for a rival group.  Moreover, the shooting occurred moments after Brannon's cousin drove his car from

one parking lot outside the Spot to another and parked the vehicle in a manner blocking the only escape route for the victims and their friends. While arguing for a directed verdict, Brannon's counsel conceded:

> [T]here has been evidence . . . that [Brannon] communicated earlier that day by phone with [co-defendant] and even the alleged third shooter, Tyrese White. There has been evidence that [Brannon] was present with them at the truck stop; there has been evidence that [Brannon] was present with them at The Spot; there has even been evidence . . . that [Brannon] was in the presence of them and/or others at the top of the hill when the shooting occurred.

And there was evidence suggesting that moments after arriving at the scene together, Brannon and two others fired a combined thirty-four shots at the same people and then fled the scene together in the same car. Therefore, we affirm because the evidence suggests Brannon and his co-defendant were not only present during the shooting, but they were active participants and fired the shots that killed one person and wounded another. *See Campbell*, 443 S.C. at 193, 904 S.E.2d at 446 ("If there is any evidence to warrant a jury instruction, a trial court must, upon request, give the instruction." (quoting *State v. Smith*, 391 S.C. 408, 412, 706 S.E.2d 12, 14 (2011))).

## HAND SIGN TESTIMONY

Brannon contends that the circuit court erred by allowing eyewitnesses to testify that he was making hand signs in the club because the testimony was improper evidence of gang affiliation. We respectfully disagree.

"To warrant reversal based on the admission or exclusion of evidence, the appellant must prove both the error of the ruling and the resulting prejudice, i.e., that there is a reasonable probability the jury's verdict was influenced by the [challenged evidence] . . . ." *J&W Corp. of Greenwood v. Broad Creek Marina of Hilton Head, LLC*, 441 S.C. 642, 679–80, 896 S.E.2d 328, 348 (Ct. App. 2023) (quoting *Vaught v. A.O. Hardee & Sons, Inc.*, 366 S.C. 475, 480, 623 S.E.2d 373, 375 (2005)).

The parties raised the issue of this sort of testimony to the circuit court during a pre-trial hearing, but the record does not contain any ruling. The judge took the issue under advisement and specified that he was "not ruling other than to say I'm aware

of [the issue] and I want to figure out how to best approach it."  The solicitor's opening statement referenced Brannon and his friends "flashing signs" inside the Spot, two witness testified to that effect, and there was no objection to any of those statements.  Brannon did not object until the State asked a third witness about hand signs.  The lack of a ruling from the circuit court provides one barrier to this argument's success.  *See Staubes v. City of Folly Beach*, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) ("Without an initial ruling by the trial court, a reviewing court simply would not be able to evaluate whether the trial court committed error.").  The plainly cumulative nature of the testimony is another.  *See State v. Richardson*, 358 S.C. 586, 596–97, 595 S.E.2d 858, 863 (Ct. App. 2004) (finding a criminal defendant was not prejudiced by the admission of evidence because the challenged testimony was "cumulative to other similar testimony that was admitted without objection").

**AFFIRMED.**

**THOMAS, HEWITT, and VINSON, JJ., concur.**